OPINION
{¶ 1} Appellants, Joseph and Diane Banks, appeal from the judgment of the Franklin County Court of Common Pleas affirming the decision of appellee City of Upper Arlington that revoked a fence permit Upper Arlington had previously issued to the Banks. For the following reasons, we affirm.
 {¶ 2} The Banks live at 2626 Chartwell Road, which is located at the corner of Chartwell Road and Barrymede Court in Upper Arlington, Ohio. Among the Banks' immediate neighbors are appellees Robert and Margaret Hinkle who live at 4646 Barrymede Court. As the Banks' home faces south toward Chartwell Road and the Hinkles' home faces west towards Barrymede Court, the Banks' backyard abuts the entire south side of the Hinkles' yard.
 {¶ 3} Prior to the Banks' purchase of their property in 1990, the northwest corner of the Banks' property gradually slopped down, becoming flat again where the property met the southwest corner of the Hinkles' yard. In 1991, the Banks constructed a retaining wall of railroad ties running parallel to the property line between the Banks' and Hinkles' property. The retaining wall, which measured one to two feet in height, eliminated a portion of the slope and created a terrace effect. The Banks then planted a row of twelve white pine trees on top of the wall.
 {¶ 4} By 2000, the white pines had grown significantly, and their weight was causing the retaining wall to lean in the direction of the Hinkles' yard. In response to the Hinkles' complaints, the Banks removed the one to two foot retaining wall and constructed a new retaining wall that was three to five feet in height. To prevent the retaining wall from bowing again, the Banks dug deeper into the ground, poured a concrete footer and staggered the railroad ties so that the retaining wall leaned towards the Banks' home. During the course of construction, approximately two truckloads of dirt was added to the Banks' backyard.
 {¶ 5} On November 1, 2001, Mrs. Banks applied to the Upper Arlington Department of Development for a permit for the construction of a fence. Mrs. Banks indicated on the application that she wished to construct a six-foot fence enclosing her side and backyards. Planning Officer Matthew Davis granted the application on November 2, 2001, and construction began immediately.
 {¶ 6} When Dr. Robert Hinkle saw fence posts being raised on top of the retaining wall, he contacted the department of development and complained to Code Compliance Officer Bryan Wagner that the fence was in violation of the Upper Arlington Planning and Zoning Code ("the zoning ordinance"). The zoning code limited the permissible height of the Banks' fence to six feet. Upper Arlington Codified Ordinance ("U.A.C.O.") 1178.02(B). Therefore, Dr. Hinkle protested that a six-foot fence built on top of a three to five foot retaining wall violated U.A.C.O. 1178.07(B), which read:
Where a fence/wall, ornamental feature or hedge is constructed on a mound, or where the ground under same has been raised to a higher level than the surrounding surface, the permissible height of the fence/wall, ornamental feature or hedge shall be reduced by the height of such mound or raised surface.
 {¶ 7} Mr. Wagner and Mr. Davis visited the Banks' property and inspected the partially-completed fence. They then informed Dr. Hinkle that they believed that the fence was in compliance with the zoning ordinance but, if Dr. Hinkle disagreed, he could appeal their decision to the Upper Arlington Board of Zoning and Planning ("BZAP").
 {¶ 8} Dr. Hinkle filed an appeal with the BZAP on November 7, 2001. Two days later, the Banks received a letter from Mr. Wagner informing them of Dr. Hinkle's appeal. At the time the Banks received this letter, the fence was fully constructed, except for the attachment of the ornamental caps.
 {¶ 9} On March 18, 2002, the BZAP held a hearing on Dr. Hinkle's appeal, during which the Hinkles and Mrs. Banks testified. After taking testimony, the BZAP debated whether the fence complied with U.A.C.O. 1178.07(B). Because U.A.C.O. 1178.02(B) limited the total permissible height of the Banks' fence to six feet, the BZAP recognized that they had to determine whether the Banks had constructed their fence on a "mound" or ground that had "been raised to a higher level than the surrounding surface." If the retaining wall constituted a "mound" or ground that had "been raised to a higher level than the surrounding surface," then the height of the fence would exceed the height restriction. On the other hand, if the retaining wall did not constitute a "mound" or ground that had "been raised to a higher level than the surrounding surface," then the fence would be in compliance with the six-foot height restriction.
 {¶ 10} During the debate of this issue, board member Riley stated that the BZAP crafted U.A.C.O. 1178.07(B) after an Upper Arlington resident created a flower bed that was two feet in height and built a six-foot fence on top of the flower bed. Upper Arlington City Council ("UA Council") then enacted U.A.C.O. 1178.07(B) to prevent similar situations.
 {¶ 11} At the end of the BZAP's debate, board member Tullett moved to uphold the approval of the Banks' fence permit as the fence was not built on a "mound" or on ground that had "been raised to a higher level than the surrounding surface." Nevertheless, the BZAP voted to not uphold the fence permit approval.
 {¶ 12} On April 8, 2002, the Banks appealed the BZAP's decision to the UA Council. The Banks filed their appeal under protest, in part, because they did not believe that the BZAP had jurisdiction to hear the Hinkles' appeal.
 {¶ 13} On May 13, 2002, the UA Council heard further testimony from Mrs. Banks and Dr. Hinkle, and voted to uphold the decision of the BZAP. The Banks then filed an appeal of the UA Council's decision to the trial court. On May 29, 2003, the trial court affirmed the decision of the UA Council. The Banks then appealed to this court.
 {¶ 14} On appeal, the Banks assign the following errors:
[1.] The trial court committed prejudicial error, as it misapplied the standard of review concerning the construction of a statute restricting the use of property.
[2.] The trial court's judgment should be reversed because the Board of Zoning and Planning never had jurisdiction to hear the appellees' initial appeal.
[3.] The trial court erred to the prejudice of the appellants because it was an abuse of discretion to affirm the vote by City Council (upholding the decision by the BZAP to revoke the fence permit).
[4.] The trial court committed prejudicial error in ruling that the appellees (the Hinkles) had standing to pursue an appeal to the BZAP.
[5.] The trial court's decision should be reversed because the City [Council's] conduct estops it from revoking the fence permit.
 {¶ 15} When presented with an R.C. Chapter 2506 administrative appeal, a trial court must consider the whole record and determine whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence. R.C. 2506.04. An appellate court, however, must comply with a more limited standard of review. Lorain CitySchool Dist. Bd. of Ed. v. State Employment Rel. Bd. (1988),40 Ohio St.3d 257, 260-261. R.C. 2506.04 grants an appellate court the limited authority "to review the judgment of the common pleas court only on `questions of law,' which does not include the same extensive power to weigh `the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court." Henley v. City of Youngstown Bd. of ZoningAppeals, 90 Ohio St.3d 142, 147, 2000-Ohio-493, quoting Kisilv. Sandusky (1984), 12 Ohio St.3d 30, fn. 4. Rather than examine the evidence, an appellate court only determines whether the trial court abused its discretion. Cross Country Inns, Inc. v.City of Westerville, Franklin App. No. 02AP-410, 2003-Ohio-3297, at ¶ 23. An abuse of discretion implies not merely an error in judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency. Id.
 {¶ 16} We will first address the Banks' second assignment of error. By that assignment of error, the Banks argue that the BZAP did not have jurisdiction to hear the Hinkles' appeal and, thus, the BZAP should have dismissed the appeal.
 {¶ 17} An administrative agency, such as the BZAP, that is created by a legislative body is limited to exercise only such authority granted to it by the legislative body. State ex rel.Shaker Square Co. v. Guion (App. 1957), 76 Ohio Law Abs. 144, paragraph one of the syllabus ("A municipal board of zoning appeals has only such authority as is granted to it by the charter and zoning ordinance"). Thus, an administrative agency given the authority to hear appeals may only act within the jurisdiction delineated by statute or code language. WaltcoTruck Equip. Co. v. City of Tallmadge Bd. of Zoning Appeals
(1988), 40 Ohio St.3d 41, 43; Steward v. Evatt (1944),143 Ohio St. 547, 549-550. However, "`the law favors and protects the right of appeal' and requires a liberal construction of statutes governing appeals." Liberty Sav. Bank v. Kettering (1995),101 Ohio App.3d 446, 449, quoting Maritime Mfrs., Inc. v. Hi-SkipperMarina (1982), 70 Ohio St.2d 257, 258.
 {¶ 18} Pursuant to U.A.C.O. 1193.08, the BZAP states:
[S]hall have power to hear and decide appeals, filed as hereinbefore provided, whether it is alleged by the appellant that there is error in any order, requirement, decision, determination, grant or refusal made by the Inspector or other administrative official in the enforcement and interpretation of the provisions of this Ordinance.
Thus, the BZAP only has authority to hear and decide appeals that are filed in accordance with designated procedure and allege that a city official erred in enforcing or interpreting the zoning ordinance.
 {¶ 19} The Banks argue that BZAP did not have authority to hear the Hinkles' appeal because the permit the Hinkles challenged was issued pursuant to the building, not zoning, code. As U.A.C.O. 1193.08 does not authorize the BZAP to hear appeals from permits issued under the building code, the Banks maintain that the BZAP should have dismissed the Hinkles' appeal. We disagree.
 {¶ 20} Our review of the Hinkles' appeal reveals that they appealed the Planning Officer and Code Compliance Officer's approval of a fence permit that violated the height restriction contained within U.A.C.O. 1178.07(B). Although no Upper Arlington official may have considered the zoning ordinance when initially granting the fence permit, after Dr. Hinkle complained about the fence, the Planning Officer and Code Compliance Officer reviewed the permit in light of the zoning ordinance and decided that the permit complied with the ordinance. Thus, the Hinkles' appeal alleged an error in a decision or determination made by administrative officials in the interpretation of the zoning ordinance. Consequently, the BZAP had jurisdiction over the Hinkles' appeal.
 {¶ 21} Accordingly, we overrule the Banks' second assignment of error.
 {¶ 22} We next address the Banks' fourth assignment of error. By that assignment of error, the Banks argue that the Hinkles did not have standing before the BZAP and, thus, the BZAP should have dismissed the Hinkles' appeal.
 {¶ 23} The right to appeal an administrative decision must be conferred by statute or ordinance. Midwest Fireworks Mfg. Co. v.Deerfield Twp. Bd. of Zoning Appeals, (2001), 91 Ohio St.3d 174,177. According to U.A.C.O. 1193.02, "[a]n appeal to the Board may be taken by any person aggrieved * * * by any decision of the Planning Officer."
 {¶ 24} The Banks argue that the Hinkles lacked standing to appeal to the BZAP because they were not aggrieved by a decision of the planning officer. Rather, the Banks contend, the Hinkles were aggrieved by a decision of the code compliance officer. We disagree.
 {¶ 25} The trial court found, and Dr. Hinkle's testimony reveals, that Dr. Hinkle met simultaneously with the planning officer and the code compliance officer, both men reviewed the matter, and both men told Dr. Hinkle that the fence was in compliance with the zoning ordinance. Therefore, because the Hinkles were aggrieved by a decision of the planning officer, they had standing to appeal to the BZAP.
 {¶ 26} Accordingly, we overrule the Banks' fourth assignment of error.
 {¶ 27} We next address the Banks' first and third assignments of error. By these assignments of error, the Banks argue that the trial court erred in not applying the plain language of U.A.C.O. 1178.07(B) to uphold the fence permit.
 {¶ 28} The primary goal of statutory interpretation is to give effect to the intent of the enacting body. Christe v. GMSMgt. Co., Inc. (2000), 88 Ohio St.3d 376, 377. To determine legislative intent, a court must first look to the language of the statute or ordinance. Bailey v. Republic Engineered Steels,Inc. (2001), 91 Ohio St.3d 38, 39. In the absence of any definition of the intended meaning of the words used in a statute or ordinance, a court must give the words used their ordinary and natural meaning. Layman v. Woo (1997), 78 Ohio St.3d 485, 487;Thompson Elec., Inc. v. Bank One, Akron, N.A. (1988),37 Ohio St.3d 259, 264. See, also, U.A.C.O. 101.03 ("excepting as otherwise provided in this section words and phrases shall be construed according to the common usage of language"). Further, in reviewing a statute or ordinance, a court cannot pick out one sentence or phrase and disassociate it from the context, but must look to the four corners of the statute or ordinance. State exrel. Thompson v. Spon (1998), 83 Ohio St.3d 551, 554. See, also,Layman, supra, at 487 ("Thus, when construing a statute, `none of the language employed therein should be disregarded'").
 {¶ 29} A statute or ordinance is ambiguous when its language is subject to one or more reasonable interpretations. FamilyMed. Found., Inc. v. Bright, 96 Ohio St.3d 183, 2002-Ohio-4034, at ¶ 8; Bailey, supra, at 40. However, if the meaning of the statute or ordinance is free from ambiguity and doubt, then a court must apply the language as written and refrain from further interpretation. Key Serv. Corp. v. Zaino (2002),95 Ohio St.3d 11. In other words, a court must adhere to the plain language of the statute or ordinance unless an ambiguity exists. Bright,
supra, at ¶ 8.
 {¶ 30} In the case at bar, whether the Banks' fence is permissible or not turns on the meaning of U.A.C.O. 1178.07(B), which requires the height of a fence to be reduced if it is constructed on "a mound, or where the ground under same has been raised to a higher level than the surrounding surface." The Banks argue that because the ordinary meaning of the word "surround" is to enclose on all sides, to encompass, or to encircle, U.A.C.O. 1178.07(B) only applies to fences that stand on ground that has been raised to a higher level than the surface on both sides of the fence. The Banks assert that their fence is not built on ground that has "been raised to a higher level than the surrounding surface" because the fence stands on ground that is higher than the surface on only one side of the fence, i.e., the Hinkles' side. We disagree.
 {¶ 31} To begin our interpretation of U.A.C.O. 1178.07(B), we first look to the ordinary meaning of "surrounding." According to Webster's Third New International Dictionary (1966) 2302, "surround" means:
[T]o be situated or found around, about, or in a ring around: as * * * f: to form a ring around: extend around or about the edge of: constitute a curving or circular boundary for: lie adjacent to all around or in most directions * * *
This definition includes two similar, but distinct, concepts: (1) to encircle or completely enclose, and (2) to be about, nearby or adjacent to in most, but not all, directions. Thus, in the context of U.A.C.O. 1178.07(B), "surrounding surface" could have one of two meanings: (1) ground encircling or enclosing the fence, i.e., the ground on both sides of the fence; or (2) ground about, nearby, or adjacent to the fence, i.e., the ground on one side of the fence.
 {¶ 32} Normally, the fact that the phrase "surrounding surface" has two separate meanings would make U.A.C.O. 1178.07(B) ambiguous. However, we must read the phrase "surrounding surface" in context with the entire provision, which requires the shortening of a fence built on ground raised higher than the "surrounding surface" or on a "mound." If we read "surrounding surface" to refer to the ground encircling or enclosing the fence, the provision would contain a redundancy given that a "mound" is ground raised to a higher level than the encircling surface. See U.A.C.O. 1178.01. In other words, ground "raised to a higher level than the surrounding surface" and "mound" would have the same meaning if we construe "surrounding surface" to mean ground encircling or enclosing the fence. However, by including the connector "or," U.A.C.O. 1178.07(B) contemplates that "mound" and ground "raised to a higher level than the surrounding surface" have different meanings. Therefore, "surrounding surface" must mean the ground on one side of the fence. Consequently, pursuant to U.A.C.O. 1178.07(B), because the ground underneath the Banks' fence is higher than the adjacent ground on the Hinkles' side, the height of the Banks' fence must be reduced by the height of the raised retaining wall.
 {¶ 33} The Banks, however, argue that this court must strictly construe U.A.C.O. 1178.07(B) in their favor because it restricts the use of real property. Zoning ordinances must be strictly construed, BP Oil Co. v. Dayton Bd. of Zoning Appeals
(1996), 109 Ohio App.3d 423, 432, but there is no need to strictly construe an ordinance that has a definite meaning.Doersam v. City of Gahanna (Sept. 30, 1997), Franklin App. No. 96APF12-1766. Cf. Nibert v. Ohio Dept. of Rehab. Corr.,
(1998), 84 Ohio St.3d 100, 102, ("[T]here is no need to liberally construe a statute whose meaning is unequivocal and definite"). Here, because we have concluded that U.A.C.O. 1178.07(B) is unambiguous, we must simply apply it as written. Doersam, supra ("In instances where a statute or ordinance `conveys a meaning which is clear, unequivocal, and definite, at that point the interpretation effort is at an end, and the statute must be applied accordingly'").
 {¶ 34} Alternatively, the Banks argue that the BZAP and the UA Council completely ignored U.A.C.O. 1178.07(B) and, instead, based their ruling upon members' personal dissatisfaction with the aesthetics of the fence. With the possible exception of one UA Council member's miscellaneous comment made during general discussion of the fence, the Banks have no evidence to support this theory. Even assuming the fence's aesthetics influenced the vote of this one council member, the Banks were not prejudiced by the council member's vote given that the BZAP and UA Council's decisions were in accordance with the plain meaning of U.A.C.O. 1178.07(B).
 {¶ 35} Finally, the Banks argue that the trial court applied the wrong standard in interpreting U.A.C.O. 1178.07(B). Relying upon the statutory rule of construction that a court may defer to an administrative interpretation of an ambiguous statute, the trial court looked to board member Riley's testimony regarding the BZAP's intent and concluded that U.A.C.O. 1178.07(B) required a reduction of the fence's height. The Banks attack the trial court for deferring to the BZAP and improperly abdicating its duty to declare the law. While our differing analysis of U.A.C.O. 1178.07(B) makes the Banks' argument moot, we note that the trial court did not defer to the BZAP on a matter of law, but merely applied a rule of law that allowed it to consider the BZAP's interpretation in construing the meaning of U.A.C.O. 1178.07(B).
 {¶ 36} Accordingly, as the trial court did not abuse its discretion in its interpretation of U.A.C.O. 1178.07(B), we overrule the Banks' first and third assignments of error.
 {¶ 37} We next address the Banks' fifth assignment of error. By that assignment of error, the Banks argue that the City of Upper Arlington is estopped from revoking the fence permit.
 {¶ 38} "Equitable estoppel precludes a party from asserting rights where he has, by his own conduct, induced another to change his position to his detriment in good faith reliance upon the other party's conduct." State ex rel. Scadden v. Willhite
(Mar. 26, 2002), Franklin App. No. 01AP-800. Generally, the doctrine of equitable estoppel will not prevent a local government from enforcing a zoning ordinance. Studar v. AuroraCity Bd. of Zoning Appeals (Dec. 7, 2001), Portage App. No. 2001-P-0015. Indeed, a municipality can only be estopped by the issuance of a permit "if the city officer or agent who issued the permit was authorized to do so, and the issuance of the permit was not illegal at the time." Whiteco Metrocom, Inc. v. City ofColumbus (1994), 94 Ohio App.3d 185, 192. See, also, State exrel. Miller v. Club LaRouge (June 28, 1990), Franklin App. No. 89AP-1323 ("A municipality may, in some instances, be estopped by the act of its officers if done within the scope and in the course of their authority or employment, but estoppel does not arise if the act done is in violation of law").
 {¶ 39} In Sergakis v. Busch (Dec. 30, 1999), Franklin App. No. 99AP-283, this court determined that a municipality could not be estopped by a permit issued in violation of the municipality's ordinances. The property owners in Sergakis obtained a building permit for the partition of a rooming house, even though the height of the rooming house's basement ceiling was lower than the minimum height the building ordinance required. Upon later inspection of the rooming house, a building inspector discovered the low ceiling and ordered the property owners to raise the ceiling so that it complied with the building ordinance. In arguing that they were entitled to a variance, the property owners asserted that the municipality was estopped from enforcing the ceiling height requirement because the municipality had previously approved the partitioning of the basement. Because the ceiling was in violation of the building ordinance when the permit was issued, this court concluded that the issuance of the permit was illegal. Consequently, the permit could not estop the municipality from enforcing the minimum ceiling height requirements.
 {¶ 40} Like the ceiling in Sergakis, the Banks' fence was in violation of a municipal ordinance when the municipality issued a permit. Because U.A.C.O. 1178.07(B) required a reduction in the permissible height of a fence built on a raised surface by the height of the raised surface, the Banks' permit for the construction of a six-foot fence was illegal. Therefore, the issuance of the permit cannot estop the City of Upper Arlington from enforcing its zoning ordinance.
 {¶ 41} Accordingly, we overrule the Banks' fifth assignment of error.
 {¶ 42} For the foregoing reasons, we overrule the Banks' five assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Lazarus, P.J., and Watson, J., concur.