OPINION
{¶ 1} Appellant, Ohio Department of Rehabilitation 
Correction, Southeastern Correctional Institution, appeals from a judgment of the Franklin County Court of Common Pleas in favor of appellee, Sammie C. Cordial, which vacated the order of the State Personnel Board of Review ("SPBR") and remanded the matter to SPBR for further proceedings. For the following reasons, we reverse.
 {¶ 2} Appellant employed appellee as a correctional officer. On June 29, 2003, appellee sustained work-related injuries to her neck, chest, back, left wrist, right elbow, and forearm. The Bureau of Workers' Compensation ("BWC") approved her request for temporary total disability ("TTD") compensation commencing on August 26, 2003.
 {¶ 3} By the spring of 2004, appellee had not returned to work due to her work-related injuries, and she continued to receive TTD compensation. Therefore, appellant took action to place appellee on an involuntary disability separation ("IDS") pursuant to Ohio Adm. Code 123:1-33-02(C). This provision provides "[i]f the appointing authority determines * * * that the employee is unable to perform his or her essential job duties [due to a "disabling illness, injury, or condition"], then the appointing authority shall issue an involuntary disability separation order." On May 14, 2004, following a hearing, appellant notified appellee that she was disability-separated from her employment. That same day, appellee appealed appellant's action to the SPBR.
 {¶ 4} Without conducting a hearing, an administrative law judge ("ALJ") issued a report recommending that the SPBR dismiss appellee's appeal because appellee stated in her notice of appeal that she was receiving TTD compensation. According to the ALJ, an employee receiving TTD compensation is, by definition, unable to return to his or her position of employment. Therefore, the ALJ reasoned that appellee constructively conceded she uld not perform essential duties of her position as of the effective date of the IDS order. Appellee filed objections to the ALJ's report and recommendation with the SPBR. The SPBR adopted the ALJ's report and recommendation and issued an order dismissing appellee's appeal "due to [appellee's] receipt of temporary total disability compensation pursuant to R.C. 124.04 and OAC 123:1-33 et seq." Appellee timely appealed that decision to the Franklin County Court of Common Pleas.
 {¶ 5} The trial court reversed the SPBR decision, finding that appellee's IDS violated R.C. 4123.90 and the public policy articulated in Coolidge v. Riverdale Loc. School Dist.,100 Ohio St.3d 141, 2003-Ohio-5357.
 {¶ 6} Appellant now appeals, assigning the following error:
The common pleas court's decision was contrary to law, when it held that Sammie Cordial's involuntary disability separation was invalid in conflict with the public policy of R.C. §§ 4123.56 and4123.90, as enunciated in Collidge v. Riverdale Local SchoolDist., 100 Ohio St.3d 141, 2003 Ohio 5357, 797 N.E.2d 61.
 {¶ 7} The issues raised by appellant's assignment of error require us to examine the interplay between an administrative code provision authorizing involuntary disability separations and the statutes authorizing TTD compensation for employees injured in the course of their employment and prohibiting retaliation against an employee for filing a workers' compensation claim. We must also interpret and apply the public policy recognized inCoolidge to the imposition of an IDS when the employee is off work and receiving TTD compensation due to a work-related injury. Because these issues primarily involve questions of law and the interpretation and application of statutes and administrative code provisions, we exercise plenary powers of review. Univ.Hosp., Univ. of Cincinnati College of Medicine v. StateEmployment Rel. Bd. (1992), 63 Ohio St.3d 339; Clayman v. StateMed. Bd. of Ohio (1999), 133 Ohio App.3d 122.
 {¶ 8} TTD compensation is authorized by R.C. 4123.56. The purpose of TTD compensation is to "compensate an injured employee for the loss of earnings that he [or she] incurs while the injury heals." State ex rel. Baker v. Indus. Comm. (2000),89 Ohio St.3d 376, 380. TTD compensation is paid when the individual is unable to work in his or her position of employment. State exrel. Horne v. Great Lakes Constr. Co. (1985), 18 Ohio St.3d 79. Such benefits are paid during the healing and treatment period until: (1) the employee has returned to work; (2) the employee's treating physician states that the employee is capable of returning to the employee's former position of employment; or (3) the temporary disability has become permanent. State ex rel.Ramirez v. Indus. Comm. (1982), 69 Ohio St.2d 630, 632; Stateex rel. Matlack v. Indus. Comm. (1991), 73 Ohio App.3d 648, 655.
 {¶ 9} R.C. 4123.90 prohibits an employer from retaliating against an employee because he or she has filed a workers' compensation claim. White v. Mt. Carmel Med. Ctr.,150 Ohio App.3d 316, 2002-Ohio-6446, at ¶ 35. R.C. 4123.90 provides in relevant part:
No employer shall discharge, demote, reassign, or take any punitive action against any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer. Any such employee may file an action in the common pleas court of the county of such employment in which the relief which may be granted shall be limited to reinstatement with back pay, if the action is based upon discharge, or an award for wages lost if based upon demotion, reassignment, or punitive action taken, offset by earnings subsequent to discharge, demotion, reassignment, or punitive action taken, and payments received pursuant to section 4123.56
and Chapter 4141. of the Revised Code plus reasonable attorney fees. * * *
Therefore, R.C. 4123.90 expressly prohibits an employer from discharging, demoting, reassigning, or taking any punitive action against an employee because the employee has filed a workers' compensation claim. The remedy for a violation of R.C. 4123.90 is an action in the common pleas court of the county where the employee is employed.
 {¶ 10} Ohio law permits a state employer to impose an IDS if an employee is incapable of performing his or her essential job duties due to a disabling illness, injury, or condition. Ohio Adm. Code 123:1-33-02(B) provides that "[w]hen an appointing authority has received the results of a medical or psychological examination and initially determines that an employee is incapable of performing the essential job duties of the employee's assigned position due to a disabling illness, injury, or condition, the appointing authority shall institute pre-separation proceedings. * * *" In addition, "[i]f the appointing authority determines, after weighing the testimony presented and the evidence admitted at the pre-separation hearing, that the employee is unable to perform his or her essential job duties, then the appointing authority shall issue an involuntary disability separation order." Ohio Adm. Code123:1-33-02(C).
 {¶ 11} The first issue we must address is whether appellant violated R.C. 4123.90 as a matter of law by imposing an IDS when appellee was off work due to a work-related injury and receiving TTD compensation. Appellant contends the trial court erred when it found that appellant's imposition of an IDS under these circumstances violated R.C. 4123.90. We agree.
 {¶ 12} The trial court noted that R.C. 4123.90 prohibits an employer from taking "any punitive action against any employee because the employee filed a [workers' compensation] claim * * *." The trial court found that an IDS is inherently punitive because it results "in a direct detrimental employment impact in the form of the loss of valuable job related benefits and securities." Therefore, the trial court determined that Ohio Adm. Code 123:1-33-02 conflicted with R.C. 4123.90. Because any conflict between an administrative rule and a statute must be resolved in favor of the statute, the trial court held that appellant violated R.C. 4123.90 as a matter of law by imposing an IDS. We disagree.
 {¶ 13} A state employer may impose an IDS when it determines, after a pre-separation hearing, that the employee is unable to perform his or her essential job duties. Nothing in the language of Ohio Adm. Code 123:1-33-02 suggests that an IDS is inherently disciplinary, punitive, or related in any way to wrongdoing. In fact, as appellant points out, a number of appellate districts have expressly held that an IDS is not "disciplinary." This court held in Collyer v. Broadview Dev. Ctr. (1991),74 Ohio App.3d 99, 101-102, that the state could not appeal from the SPBR in an IDS case in part because "it is undisputed that the disability separation was not imposed for disciplinary reasons." See, also,Gottfried v. Dept. of Rehab. Corrections, Crawford App. No. 3-04-33, 2005-Ohio-1783 (IDS based on employee being medically determined to be unable to perform the duties of his position, not for disciplinary reasons); Armitage v. Miami Univ. (1995),103 Ohio App.3d 461 (affirming dismissal of university's R.C.124.34 appeal because employee was not removed for disciplinary reasons). Therefore, contrary to the trial court's finding, an IDS is not inherently disciplinary or punitive. Because an IDS is not inherently disciplinary or punitive, Ohio Adm. Code123:1-33-02 does not necessarily conflict with R.C. 4123.90. Accordingly, the trial court erred by invalidating this administrative code provision as a matter of law and by finding a violation of R.C. 4123.90.
 {¶ 14} Appellee argues that an IDS violates R.C. 4123.90
because it constitutes a "discharge" even if it is not disciplinary or punitive in nature. Appellee points to R.C.124.03(A), which provides that "[a]s used in this division, `discharge' includes disability separations." Appellee contends that because a discharge includes an IDS for purposes of determining SPBR jurisdiction, the same meaning must apply to the use of the word "discharge" in R.C. 4123.90. Therefore, appellee argues that an IDS inherently conflicts with the "discharge" provision in R.C. 4123.90. We disagree.
 {¶ 15} Although R.C. 124.03(A) defines a "discharge" as including an IDS for purposes of determining SPBR jurisdiction, it expressly limits that definition to that statutory division. Therefore, simply because a discharge includes an IDS for purposes of SPBR jurisdiction does not establish that an IDS is a discharge for purposes of R.C. 4123.90.
 {¶ 16} Moreover, we find that an IDS is not a "discharge" under R.C. 4123.90 because an IDS employee has the right of reinstatement to his or her position pursuant to R.C. 124.32(B) and Ohio Adm. Code 123:1-33-04. Here, appellee has up to three years from the date on which she is no longer in active work status to notify appellant that she desires reinstatement. Ohio Adm. Code 123:1-33-04(C) mandates appellee's reinstatement if she timely applies and demonstrates that she is able to perform the essential duties of her former position. This right of reinstatement distinguishes an IDS from a discharge, which, unlike an IDS, completely severs the employment relationship.
 {¶ 17} The trial court also erred in finding a violation of R.C. 4123.90 because there was no showing that appellant imposed the IDS because appellee filed or pursued a workers' compensation claim. The record is devoid of any evidence that appellant had a retaliatory motive when it imposed the IDS. Without evidence that appellant imposed the IDS because appellee filed or pursued a workers' compensation claim, it was error to find a violation of R.C. 4123.90 even if the IDS resulted in some detrimental employment impact. This conclusion is supported by Coolidge,
supra, wherein it was undisputed that the employee was not fired for filing a workers' compensation claim. Although the court inCoolidge looked to R.C. 4123.90 for purposes of identifying the public policy underlying the statute, it did not find a statutory violation due to the absence of a retaliatory motive.
 {¶ 18} Although we find that an employer's imposition of an IDS on an employee receiving TTD compensation does not violate R.C. 4123.90 as a matter of law, we do not find that an IDS could never violate R.C. 4123.90. An IDS does not insulate an employer from a claim of retaliation under R.C. 4123.90. Rather, IDS could violate R.C. 4123.90 if the employer used it to retaliate against an employee for asserting his or her rights under the Workers' Compensation Act.
 {¶ 19} However, a violation of R.C. 4123.90 is enforced by filing an action in the common pleas court of the county where the employee is employed. Here, appellee did not bring an action in the common pleas court to enforce R.C. 4123.90, but instead, appealed an administrative order pursuant to R.C. 119.12. We recognize that the appellee did not have the opportunity to present evidence of retaliation before the SPBR because the ALJ dismissed her appeal sua sponte without a hearing based solely on her statement that she was off work due to a work-related injury and receiving TTD compensation. However, the SPBR was not the proper forum to assert a retaliation claim under R.C. 4123.90.
 {¶ 20} The powers and duties of the SPBR are set forth in R.C. 124.03. In the context of an IDS, the SPBR has jurisdiction to hear appeals of employees in the classified state service from final decisions of appointing authorities relative to whether the employee is capable of performing his or her essential job duties due to a disabling illness, injury, or condition. R.C. 124.03(A); Ohio Adm. Code 123:1-33-02(C). An administrative agency given the authority to hear appeals may only act within the jurisdiction delineated by statute or code language. Banks v. UpperArlington, Franklin App. No. 03AP-656, 2004-Ohio-3307; WaltcoTruck Equip. Co. v. Tallmadge Bd. of Zoning Appeals (1988),40 Ohio St.3d 41, 43; Penn Central Transp. Co. v. Pub. Util. Comm.
(1973), 35 Ohio St.2d 97. Therefore, the SPBR does not have jurisdiction to determine whether an IDS violates R.C. 4123.90. Although appellee may in theory be able to prove that appellant acted with a retaliatory intent when it imposed the IDS, appellee's remedy is an action in the common pleas court — not an administrative appeal of a SPBR decision.
 {¶ 21} Appellant also argues that the trial court erred when it found that appellant's imposition of an IDS violated the public policy articulated in Coolidge. We agree.
 {¶ 22} In Coolidge, a public school teacher was injured at work and awarded TTD compensation pursuant to R.C. 4123.56. The school board fired the teacher after she had exhausted all available leave and remained unable to return to work because of her allowed condition. The teacher appealed her firing, alleging that the school board lacked "good and just cause" and that the firing violated the public policy reflected in R.C. 4123.56
(authorizing TTD compensation) and R.C. 4123.90. It was undisputed that the school board acted without any retaliatory motive and, therefore, R.C. 4123.90 was not directly at issue. Nevertheless, the court looked to R.C. 4123.90 for guidance in defining the underlying public policy at issue.
 {¶ 23} The court noted that "[t]he basic purpose of any antiretaliation statute is to enable employees to freely exercise their rights without fear of retribution from their employers." Id. at ¶ 43. However, even in the absence of a retaliatory motive, the court found a violation of public policy when the effect of the firing was inconsistent with the employee's rights. More specifically, the court reasoned that to allow an employer to fire an employee receiving TTD compensation for violating an attendance provision in the employee's employment contract would impair both the employee's right to seek workers' compensation benefits and his or her right to be absent from work while recovering from the allowed condition. It would also undermine the purpose of the workers' compensation system by forcing the employee to choose between applying for the benefits to which he or she is entitled and potentially losing his or her job. Therefore, the court determined that the firing violated public policy.
 {¶ 24} As previously noted, an IDS is significantly different from the firing at issue in Coolidge because the IDS employee has a right to be reinstated to his or her former position if the employee timely demonstrates that he or she has recovered from the injury or disability and that he or she is able to perform the essential duties of the position. Because an IDS employee has the right to be reinstated to his or her former position if the employee can perform the essential job duties, the employee is not faced with choosing between exercising his or her right to workers' compensation benefits and potentially losing his or her job. Therefore, an IDS does not undermine the public policy recognized in Coolidge.
 {¶ 25} Contrary to the trial court's interpretation,Coolidge does not hold that an employee cannot suffer any
demonstrable detriment as a direct consequence of receiving workers' compensation benefits. Rather, Coolidge held that an employer may not fire an employee for being absent from work when the employee had the right to be off work because he or she was receiving TTD compensation for a work-related injury. Firing an employee under these circumstances undermines the public policy behind the workers' compensation scheme because it forces the employee to choose between applying for benefits to which he or she is entitled and potentially losing his or her job. Because an IDS employee has the right to be reinstated to his or her position of employment upon demonstrating that he or she has recovered from the injury or disability, an IDS does not threaten this public policy. Although an IDS employee must timely demonstrate that he or she has recovered from the injury or disability and can perform the essential duties of the former position, this condition is not of such magnitude that an employee is likely to be discouraged from exercising his or her rights under the workers' compensation scheme.
 {¶ 26} Nor is there evidence in the record indicating how an IDS would impact appellee's benefit package. The trial court made certain assumptions about the impact of an IDS on appellee's benefits without any factual or legal basis. For example, the trial court failed to distinguish between those benefits that appellee is not entitled to because she is receiving TTD compensation and those benefits she is not entitled to because appellant imposed an IDS. When an employee receives workers' compensation benefits, the state looks to the workers' compensation system and not to its own disability programs to fund certain costs. This is true regardless of whether an IDS is imposed. Thus, for example, R.C. 124.385(B)(9) and Ohio Adm. Code123:1-33-14(A) preclude appellee from receiving disability leave benefits because she is a TTD recipient, not because she is an IDS employee. In any event, the record here does not reflect how an IDS impacted appellee's benefits, if at all.
 {¶ 27} Moreover, there is a public interest underlying the statutes and administrative code provisions that authorize the public employer's imposition of an IDS. Presumably, that interest relates at least in part to the costs associated with maintaining a person's employment when he or she is unable to work. That interest is balanced by the IDS employee's right to be reinstated upon the timely demonstration that the employee has recovered and can perform the essential duties of his or her former position. This public interest, balanced by the employee's reinstatement right, does not conflict with the public policy recognized inCoolidge.
 {¶ 28} In conclusion, we sustain appellant's sole assignment of error. We find that the trial court erred when it held that appellant violated R.C. 4123.90 as a matter of law by placing appellee on an IDS. The trial court also erred in holding that appellant's imposition of an IDS violated the public policy recognized in Coolidge. Accordingly, we reverse the judgment of the Franklin County Court of Common Pleas and reinstate the order of the SPBR.
Judgment reversed.
Petree and McGrath, JJ., concur.