[Cite as *State ex rel. Ruffin v. Indus. Comm.*, 2024-Ohio-799.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Minnie J. Ruffin, | : | |
| Relator, | : | |
| | : | No. 22AP-716 |
| v. | : | |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

_____

D E C I S I O N

Rendered on March 5, 2024

_____

**On brief:** *Nager, Romaine & Schneiberg Co., LPA, Catherine B. Lietzke,* and *Evan M. Schantz*, for relator.

**On brief:** *Dave Yost*, Attorney General, and *David Canale*, for respondent Industrial Commission of Ohio.

_____

IN MANDAMUS

BOGGS, J.

{¶ 1} Relator, Minnie J. Ruffin, seeks a writ of mandamus ordering respondent, the Industrial Commission of Ohio, to grant her request for temporary total disability ("TTD") compensation, or in the alternative, a limited writ, remanding this matter to the commission for a rehearing on the merits. For the following reasons, we deny her petition for writ of mandamus.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate. The magistrate considered the action on its merits and issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate concluded that Ruffin did not demonstrate that the commission abused its discretion when it found that Ruffin was not entitled to TTD compensation. Accordingly, the magistrate recommended this court deny Ruffin's request for a writ of

mandamus, as she has not established a clear legal right to the requested relief or that the commission is under a clear legal duty to provide such relief.

{¶ 3} No objections have been filed to the magistrate's decision. "If no timely objections are filed, the court may adopt a magistrate's decision unless the court determines that there is an error of law or other defect evident on the face of the decision." Civ.R. 53(D)(4)(c).

{¶ 4} Upon review, we find no error in the magistrate's findings of fact or conclusions of law. Therefore, we adopt the magistrate's decision, including the findings of fact and the conclusions of law therein, as our own and conclude that Ruffin has failed to demonstrate she is entitled to a writ of mandamus. In accordance with the magistrate's decision, the requested writ of mandamus is denied.

*Writ of mandamus denied.*

BEATTY BLUNT and EDELSTEIN, JJ., concur.

———————————

# **APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Minnie J. Ruffin, | : | |
| Relator, | : | |
| v. | : | No.  22AP-716 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on November 9, 2023

*Nager*, *Romaine & Schneiberg Co.*, *LPA, Catherine B. Lietzke*, and *Evan M. Schantz*, for relator.

*Dave Yost*, Attorney General, and *David Canale*, for respondent Industrial Commission of Ohio.

IN MANDAMUS

**{¶ 5}**   Relator Minnie J. Ruffin seeks a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to grant relator's request for temporary total disability ("TTD") compensation or, in the alternative, to remand this matter to the commission for a rehearing.

**I. Findings of Fact**

**{¶ 6}**   1. On September 12, 2008, relator was injured in the course and arising out of her employment with respondent The Arthur Corporation ("Arthur Corporation") when she was pushing boxes through a machine.

**{¶ 7}**   2. Relator's workers' compensation claim was ultimately allowed for the following conditions: sprain lumbar region; substantial aggravation of pre-existing

degenerative disc disease at L4-5 and L5-S1; substantial aggravation of pre-existing degenerative spondylolisthesis at L4-5 and L5-S1; substantial aggravation of pre-existing stenosis at L4-5 and L5-S1; Left L5-S1 radiculopathy; major depressive disorder, single episode, moderate. (Stip. at 391.) Relator's claim was ultimately disallowed for the following conditions: neuroforaminal narrowing at L4-5, moderately severe; bilateral lumbar radiculopathy. (Stip. at 391.)

{¶ 8} 3. Following her injury, relator was placed under work restrictions or found to be disabled from work as documented in multiple MEDCO-14 physician's report of work ability ("MEDCO-14") forms beginning with a MEDCO-14 dated September 16, 2008. Additionally, multiple C-9 physician's request for medical service or recommendation for additional conditions for industrial injury or occupation disease ("C-9") forms were filed over the history of the claim.

{¶ 9} 4. In a MEDCO-14 dated August 20, 2012, John P. Heilman, D.C., indicated that relator was completely disabled from work from August 20 until September 3, 2012. Dr. Heilman indicated that relator could return to work with restrictions from September 4 until September 20, 2012 in a MEDCO-14 dated August 29, 2012. Dr. Heilman indicated relator could return to work with restrictions from September 27 until October 31, 2012 in a MEDCO-14 dated October 3, 2012.

{¶ 10} 5. Following the October 3, 2012 MEDCO-14, multiple C-9 forms listing Dr. Heilman as the treating physician were filed including C-9 forms dated October 9, 2012, March 5, 2013, and July 17, 2013.

{¶ 11} 6. On July 19, 2013, relator presented to the emergency department of the Firelands Regional Medical Center in Sandusky, Ohio with complaints of right-sided hip and back pain. In an emergency room report signed July 21, 2013, Amir H. Shahideh, M.D., stated that relator "had no red flags for back pain" and "was seen ambulating in the emergency department without much difficulty." (Stip. at 341.) Dr. Shahideh stated that because relator "was complaining of pain worse in the morning and better in the evening after she had been on her feet all day, I felt that there was some component of osteoarthritis involved." (Stip. at 341.) Dr. Shahideh noted that relator "did have some right-sided lower back pain, which she said was chronic for her and this combined with her right-sided hip pain, I felt that maybe she had some lumbar radiculopathy as well." (Stip. at 341.) Based on

the examination, Dr. Shahideh diagnosed relator with lumbar radiculopathy and osteoarthritis.[1] Relator was provided steroids and discharged home in stable condition with instructions to speak with her primary care physician.

{¶ 12} 7. Relator retired on January 31, 2014.

{¶ 13} 8. In a letter dated February 12, 2014 addressed to relator's counsel, Dr. Heilman stated the following:

> This letter is regarding the claim for Minnie Ruffin. I cannot deny the objective and subjective findings continue to be the same. Minnie is suffering from a chronic condition as a result of her accident. Her condition is easily aggravated at work and at home. When she exacerbates the same symptoms and same orthopedic and neurological findings are seen. This woman has worked hard all of her life. She is 66 years old and the work that she does aggravates it. She probably won't feel better until she leaves that employment. However, she continues to require care during these periods of exacerbation.

(Stip. at 344.)

{¶ 14} 9. A psychological evaluation of relator was conducted by Raymond D. Richetta, Ph.D., on September 17, 2015. Dr. Richetta found relator met the diagnostic criteria for major depressive disorder, single episode, moderate, and concluded that such condition was a direct and proximate consequence of the allowed physical conditions in relator's claim.

{¶ 15} 10. In a MEDCO-14 dated September 17, 2015, Dr. Richetta indicated that relator was temporarily not released to any work, including the former position of employment from September 17, 2015 until March 17, 2016.

{¶ 16} 11. On October 13, 2015, relator filed a C-86 motion requesting an additional allowance for major depressive disorder, single episode, moderate based on the report of Dr. Richetta.

{¶ 17} 12. An independent psychological evaluation of relator was conducted by Francis L. McCafferty, M.D., on December 12, 2015. Dr. McCafferty found that the requested diagnosis of major depressive disorder, moderate single episode, nonpsychotic was supported by the medical evidence in the file, the evaluation, and subjective and/or

---

[1] Osteoarthritis was not an allowed condition in the claim.

objective findings. Furthermore, Dr. McCafferty opined that the requested condition was caused by a compensable physical injury sustained by relator.

{¶ 18} 13. In a C-84 request for temporary total disability ("TTD") compensation dated January 3, 2016, relator indicated that she was not presently working in any capacity and was receiving Social Security retirement benefits. On January 12, 2016, relator filed a C-86 motion requesting TTD compensation "from September 17, 2015 through estimated return to work date of March 17, 2016 and to continue." (Stip. at 364.)

{¶ 19} 14. On February 10, 2016, a commission district hearing officer ("DHO") conducted a hearing on relator's January 12, 2016 C-86 requesting TTD compensation. In an order mailed February 17, 2016, the DHO denied relator's request for TTD compensation. In support of the determination, the DHO found that relator "abandoned the work force for reasons unrelated to her claim, when she terminated her employment with the Employer on 01/31/2014." (Stip. at 378.) The DHO concluded that relator "abandoned the workforce, and therefore, did not suffer any loss of earnings from 09/17/2015 to the date of [the] hearing" since "there is no indication of ongoing medical restrictions due to the allowed conditions in the claim, nor any indication of effort on the part of [relator] to secure employment after leaving the former position of employment on 01/31/2014." (Stip. at 379.)

{¶ 20} 15. On March 28, 2016, a commission staff hearing officer ("SHO") conducted a hearing on relator's appeal from the February 17, 2016 DHO order. In an order mailed April 5, 2016, the SHO affirmed the DHO order and denied relator's January 12, 2016 C-86 requesting TTD compensation. The SHO found that relator was not entitled to TTD compensation "as it appears [relator] retired on 01/31/2014, for reasons unrelated to her industrial injury." (Stip. at 391.) With regard to relator's testimony, the SHO made the following findings:

> Although [relator] testified that she retired as John Heilman, D.C., told her she would not get better until she stopped working, there are no retirement or resignation papers contained in the claim file which certify that [relator] retired for reasons related to her industrial injury as alleged. The last physical restrictions contained in the claim file were from Dr. Heilman and certified restrictions through the date of 10/31/2012 only, per the MEDCO-14 report of Dr. Heilman dated 10/03/2012. Despite the [relator's] testimony that she

was working under significant restrictions from Dr. Heilman at the time of her retirement/resignation on 01/31/2014, there are no documented restrictions in the claim for the period from 10/31/2012 through 01/31/2014.

Further, [relator] testified she retired as Dr. Heilman had told her that she would not get better until she left the workforce. However, in a report of Dr. Heilman dated 02/12/2014, which is approximately two weeks after [relator] resigned, Dr. Heilman does not indicate his awareness of [relator's] resignation/retirement as he indicated she would not feel better until she "leaves that employment." [Relator] had actually left the employment approximately two weeks prior to Dr. Heilman authoring that report.

Further, [relator] testified that since her retirement/resignation on 01/31/2014 from the named Employer, she has not looked for any other work and has not worked anywhere since 01/31/2014. There is a lack of evidence that [relator] was completely disabled from all employment at the time she retired. As [relator] was not working or seeking work over the period of 02/01/2014 through 09/16/2015, the Staff Hearing Officer finds that [relator] does not have any wages to replace. [Relator] testified she has been receiving Social Security Retirement.

(Stip. at 391-92.)

{¶ 21} 16. On April 21, 2016, relator appealed the April 5, 2016 SHO order to the commission. The commission refused the appeal in an order mailed April 27, 2016.

{¶ 22} 17. On November 30, 2022, over six years after the April 27, 2016 commission order refusing relator's appeal, relator filed her complaint in this mandamus action.

## II. Discussion and Conclusions of Law

{¶ 23} Relator seeks a writ of mandamus ordering the commission to grant her TTD compensation.

## A. Requirements for Mandamus

{¶ 24} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, a relator must establish a clear legal right to the requested relief, that the commission has a clear legal duty to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Belle Tire Distribs. v. Indus. Comm.*, 154 Ohio St.3d 488, 2018-Ohio-2122; *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). Where the commission's factual determination is

supported by some evidence, it has not abused its discretion and this court must uphold the decision. *State ex rel. Seibert v. Richard Cyr, Inc.*, 157 Ohio St.3d 266, 2019-Ohio-3341, ¶ 44, citing *State ex rel. Pass v. C.S.T. Extraction Co.*, 74 Ohio St.3d 373, 376 (1996).

## B. Temporary Total Disability under Workers' Compensation Law

{¶ 25} " 'The purpose of TTD compensation is to "compensate an injured employee for the loss of earnings that [the employee] incurs while the injury heals." ' " *Ewell v. Montgomery Cty. Court of Common Pleas*, 10th Dist. No. 13AP-1078, 2014-Ohio-3047, ¶ 13, quoting *Cordial v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 05AP-473, 2006-Ohio-2533, ¶ 8, quoting *State ex rel. Baker v. Indus. Comm.*, 89 Ohio St.3d 376, 380 (2000). When a claimant is unable to work at their prior position of employment, TTD compensation is paid. *Id.* In order to be awarded TTD compensation, " 'the claimant must show not only that he or she lacks the medical capability of returning to the former position of employment but that a cause-and-effect relationship exists between the industrial injury and an actual loss of earnings.' " *State ex rel. Ohio State Univ. v. Pratt*, 169 Ohio St.3d 527, 2022-Ohio-4111, ¶ 17, quoting *State ex rel. McCoy v. Dedicated Transport, Inc.*, 97 Ohio St.3d 25, 2002-Ohio-5305, ¶ 35. " 'In other words, it must appear that, but for the industrial injury, the claimant would be gainfully employed.' " *Id.*, quoting *McCoy* at ¶ 35. "TTD benefits are paid during the healing and treatment period until: (1) the employee returns to work; (2) the employee's treating physician states that the employee is capable of returning to the former position of employment; or (3) the temporary disability becomes permanent." *Ewell* at ¶ 13.

{¶ 26} R.C. 4123.56, which governs TTD compensation, contains restrictions preventing the awarding of TTD compensation, providing in pertinent part:

> [P]ayment [for TTD] shall not be made for the period when any employee has returned to work, when an employee's treating physician has made a written statement that the employee is capable of returning to the employee's former position of employment, when work within the physical capabilities of the employee is made available by the employer or another employer, or when the employee has reached the maximum medical improvement.

R.C. 4123.56(A). R.C. 4123.56(B) provides formulas to compensate employees in situations where an employee "suffers a wage loss as a result of returning to employment other than the employee's former position of employment due to an injury or occupational

disease" or where an employee "suffers a wage loss as a result of being unable to find employment consistent with the employee's disability resulting from the employee's injury or occupational disease."

{¶ 27} Until the enactment of 2020 Am.Sub.H.B. No. 81 ("H.B. 81"), voluntary abandonment of employment was an affirmative defense to a claim for TTD compensation. *See State ex rel. Quest Diagnostics, Inc. v. Indus. Comm. of Ohio*, __ Ohio St.3d __, 2023-Ohio-2213, ¶ 16. Effective September 15, 2020, H.B. 81 amended R.C. 4123.56 by adding division (F), which provides:

> If an employee is unable to work or suffers a wage loss as the direct result of an impairment arising from an injury or occupational disease, the employee is entitled to receive compensation under this section, provided the employee is otherwise qualified. If an employee is not working or has suffered a wage loss as the direct result of reasons unrelated to the allowed injury or occupational disease, the employee is not eligible to receive compensation under this section. It is the intent of the general assembly to supersede any previous judicial decision that applied the doctrine of voluntary abandonment to a claim brought under this section.

R.C. 4123.56(F). Claims pending on or arising after the effective date are subject to the provisions of R.C. 4123.56(F). *State ex rel. Autozone Stores, Inc. v. Indus. Comm. of Ohio*, 10th Dist. No. 21AP-294, 2023-Ohio-633, ¶ 8, fn. 1; *Pratt*, 2022-Ohio-4111, ¶ 10, fn. 2; H.B. 81, Section 3.

## C. Application

{¶ 28} Initially, it is important to note that R.C. 4123.56(F) does not apply in this mandamus action since relator's claim for TTD compensation was resolved by the commission prior to the effective date of H.B. 81. Rather, the law as it existed at the time of the commission's determination controls. *Pratt*, 2022-Ohio-4111, ¶ 10, fn. 2. Thus, the doctrine of voluntary abandonment applies to the question presented in this matter. No party argues otherwise. Additionally, it is noted that despite the delay of over six years from the commission's final order denying relator's request for TTD compensation to the filing

of this action in mandamus, the commission did not assert the defense of laches in its answer.[2] Respondent Arthur Corporation did not file an answer.

{¶ 29} The Supreme Court of Ohio has held that under the judicially-created doctrine of voluntary abandonment, "when a workers' compensation claimant voluntarily removes [themselves] from [their] former position of employment for reasons unrelated to a workplace injury, [the claimant] is no longer eligible for [TTD] compensation, even if the claimant remains disabled at the time of [their] separation from employment." *State ex rel. Klein v. Precision Excavating & Grading Co.*, 155 Ohio St.3d 78, 2018-Ohio-3890, ¶ 29. "[A]n injury-induced departure from the workforce (involuntary abandonment) and a departure based on the claimant's intentional conduct (voluntary abandonment) are mutually exclusive. The former is compensable; the latter is not." *Quest Diagnostics*, 2023-Ohio-2213, at ¶ 19. *See Pratt*, 2022-Ohio-4111, at ¶ 24 (stating that the relevant "question is whether those circumstances demonstrate a voluntary abandonment of the workforce—permanent or temporary—such that the injured worker's wage loss is not the result of the work injury" or "[i]n other words, do the circumstances indicate that the injured worker would be working—somewhere—but for the injury"). The Supreme Court of Ohio has stated that "[w]hen determining whether an employee's retirement bars a subsequent request for [TTD] compensation, two considerations predominate: (1) was the retirement precipitated

---

[2] "In nonelection cases, laches is an affirmative defense which must be raised or else it is waived." *State ex rel. Spencer v. E. Liverpool Planning Comm.*, 80 Ohio St.3d 297, 299 (1997). *See State ex rel. Plain Dealer Publishing Co. v. Cleveland*, 75 Ohio St.3d 31, 33 (1996) (stating that "[a]n affirmative defense is waived under Civ.R. 12(H), unless it is presented by motion before pleading pursuant to Civ.R. 12(B), affirmatively in a responsive pleading under Civ.R. 8(C), or by amendment under Civ.R. 15"); *State ex rel. Witt v. Indus. Comm. of Ohio*, 154 Ohio St.3d 286, 2018-Ohio-1693, ¶ 29. " 'Laches occurs when unreasonable and inexcusable delay in asserting a known right causes material prejudice.' " *State ex rel. Technical Constr. Specialties, Inc. v. DeWeese*, 155 Ohio St.3d 484, 2018-Ohio-5082, ¶ 16, quoting *State ex rel. Carver v. Hull*, 70 Ohio St.3d 570, 577 (1994). *See State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections*, 74 Ohio St.3d 143, 145 (1995) (stating that the four elements of laches are "(1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party"). "Whether laches will bar a claim is well within the court's discretion." *Technical Constr.* at ¶ 16.

In a prior workers' compensation decision, this court found laches barred relief in mandamus where a six and one-half year lapse of time occurred between the commission's denial of the claimant's request for permanent total disability compensation and the claimant's filing of the mandamus action. *State ex rel. McElrath v. Cincinnati Bronze*, 10th Dist. No. 95APD01-131, 1996 Ohio App. LEXIS 2772, at *5 (June 28, 1996) (finding that "prejudice to the commission does in fact exist as the lapse of time creates special difficulty in attempting to defend a stale record and one that may not be subject to further clarification as a consequence of the loss of a witness or those providing information upon which the earlier decision was premised").

by the workplace injury and (2) did the claimant remain in the work force after retiring?" *State ex rel. Rouan v. Indus. Comm. of Ohio*, 133 Ohio St.3d 249, 2012-Ohio-4639, ¶ 1.

{¶ 30} In support of her argument that a claimant cannot abandon a job that she is unable to perform due to the industrial injury, relator cites to *State ex rel. Pretty Prods. v. Indus. Comm. of Ohio*, 77 Ohio St.3d 5 (1996) and several other subsequent cases. Some of the cases cited by relator have been subsequently overruled or limited. *See Klein,* 2018-Ohio-3890, at ¶ 30 (stating that it was not necessary to "overrule *Pretty Prods.* in its entirety because its dispositive holding remains valid—a work-rule infraction may not constitute voluntary abandonment if an industrial injury precipitated that infraction"); *State ex rel. Walmart, Inc. v. Hixson*, 10th Dist. No. 19AP-323, 2021-Ohio-3802, ¶ 19 (discussing impact of *Klein* on voluntary abandonment precedent and holding that "*Klein* must be applied retrospectively"). Furthermore, the cases cited by relator concern voluntary abandonment in the context of termination of a claimant's employment, not retirement. Thus, the cases cited by relator are of limited value in analyzing the issue presented in this matter.

{¶ 31} Considering the first question under *Rouan*, i.e., whether the retirement was precipitated by the workplace injury, the record reflects relator was not under any work restrictions related to the allowed conditions in the claim at the time of her retirement. Indeed, the last work restrictions in the record appear in Dr. Heilman's October 3, 2012 MEDCO-14, in which it was indicated that relator could return to work with restrictions from September 27 until October 31, 2012. It is undisputed relator retired on January 31, 2014, over a year after those restrictions were in effect.[3]

{¶ 32} Relator asserts she "stopped working on the advice of her doctor, who told her that she was not going to get any better until she stopped working." (Relator's Brief at 11.) There are several flaws in this reasoning. First, Dr. Heilman did not recommend that relator leave all employment, but instead only stated that relator "probably won't feel better until she leaves *that* employment." (Emphasis added.) (Stip. at 344.) Second, Dr. Heilman made this statement in his February 12, 2014 letter—after relator retired on January 31, 2014. Moreover, the text of Dr. Heilman's letter does not reflect awareness of relator's retirement. The text also does not indicate that the contents of the letter had been

---

[3] *See* Relator's Brief at 2.

communicated to relator prior to her retirement. Thus, as to the first question under *Rouan*, 2012-Ohio-4639, some evidence supports the commission's finding that relator's retirement was not precipitated by the workplace injury.

**{¶ 33}** As to the second question under *Rouan*, i.e., whether the claimant remained in the workforce after retiring, the SHO found that relator "testified that since her retirement/resignation on 01/31/2014 from the named Employer, she has not looked for any other work and has not worked anywhere since 01/31/2014." (Stip. at 392.) Consistent with the SHO's findings, it is undisputed that relator did not seek other employment or otherwise participate in the workforce after her retirement.

**{¶ 34}** Therefore, there exists some evidence in the record to support the commission's factual determination that relator voluntarily abandoned her employment for reasons unrelated to her injury. It is not this court's role to reweigh or second-guess the evidence or the inferences raised therefrom. *See State ex rel. Honda of Am. Mfg. v. Indus. Comm.*, 10th Dist. No. 11AP-528, 2012-Ohio-3335, ¶ 33 (stating that the "voluntary nature of any claimant's departure from the workforce or abandonment is a factual question which centers around the claimant's intent at the time of retirement" and the "determination of such intent is a factual question which must be determined by the commission"); *Klein*, 2018-Ohio-3890, at ¶ 39 (stating that "[v]oluntary abandonment of employment is primarily a question of intent" and "[t]he presence of that intent is a factual determination for the commission"). As some evidence supports the commission's factual determination, relator has not demonstrated the commission abused its discretion in denying relator's January 12, 2016 motion for TTD compensation.

## D. Conclusion

**{¶ 35}** Based on the foregoing, relator has not demonstrated a clear legal right to the requested relief or that the commission is under a clear legal duty to provide such relief. Accordingly, it is the decision and recommendation of the magistrate that relator's request for a writ of mandamus should be denied.

/S/ MAGISTRATE
JOSEPH E. WENGER IV

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.