[Cite as *State ex rel. Butler v. Indus. Comm.*, 2023-Ohio-3774.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Butler Village, | : | |
| Relator, | : | No. 22AP-274 |
| v. | : | (REGULAR CALENDAR) |
| Industrial Commission of Ohio et al., | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on October 17, 2023

**On brief:** *Tarkowsky & Piper Co.*, *L.P.A.*, *John Tarkowsky*, and *Gregory J. Tarkowsky*, for relator.

**On brief:** *Dave Yost*, Attorney General, and *Cindy Albrecht*, for respondent Industrial Commission of Ohio.

**On brief:** *Nager, Romaine & Schneiberg Co. L.P.A.*, *Heaven N. Jaafar*, *Catherine Lietzke*, *Jerald A. Schneiberg*, and *Bradley Howenstein*, for respondent Stephanie Crow.

IN MANDAMUS

LUPER SCHUSTER, J.

{¶ 1} Relator, Butler Village, initiated this original action requesting this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order granting the request of respondent, Stephanie Crow, for temporary total disability ("TTD") benefits and to return the claim to the commission for a rehearing.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this court referred the matter to a magistrate. The magistrate issued the appended decision, including findings of fact and conclusions of law. The magistrate

determined there was some evidence to support the commission's order finding that Crow was unable to work as a direct result of an impairment arising from her workplace injury. Thus, the magistrate found the commission did not abuse its discretion in granting Crow's request for TTD compensation, and the magistrate recommends we deny Butler Village's request for a writ of mandamus.

{¶ 3} No party has filed objections to the magistrate's decision. "If no timely objections are filed, the court may adopt a magistrate's decision unless it determines that there is an error of law or other defect evidence on the face of the decision." Civ.R. 53(D)(4)(c). The case is now before this court for review.

{¶ 4} Finding no error of law or other defect on the face of the magistrate's decision, we adopt the decision as our own, including the findings of fact and conclusions of law contained therein. Accordingly, we deny Butler Village's request for a writ of mandamus.

*Writ of mandamus denied.*

DORRIAN and LELAND, JJ., concur.

———————————

## **APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Butler Village, | : | |
| Relator, | : | |
| v. | : | No. 22AP-274 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

---

### M A G I S T R A T E ' S   D E C I S I O N

Rendered on July 28, 2023

---

*Tarkowsky & Piper Co., L.P.A., John Tarkowsky,* and *Gregory J. Tarkowsky*, for relator.

*Dave Yost*, Attorney General, and *Cindy Albrecht*, for respondent Industrial Commission of Ohio.

*Nager, Romaine & Schneiberg Co., L.P.A., Catherine Lietzke*, and *Jerald A. Schneiberg*, for respondent Stephanie Crow.

---

IN MANDAMUS

{¶ 5} Relator, Butler Village ("Butler"), seeks a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order granting temporary total disability ("TTD") compensation to respondent Stephanie Crow.

## I. Findings of Fact

{¶ 6}   1. On March 26, 2021, Crow sustained an injury due to a fall in the course of and arising out of her employment with Butler. At the time of her injury, Crow was employed by Butler with several duties including mayor's court clerk, income tax commissioner, and council clerk. A first report of an injury, occupational disease or death form ("FROI-1") dated April 12, 2021 was filed with the Bureau of Workers' Compensation ("BWC").

{¶ 7}   2. Crow's workers' compensation claim was initially allowed for the following conditions: "comminuted 3-part fracture of surgical neck [with] intraarticular involvement; abrasion of left hand." (R. at 39.)

{¶ 8}   3. Michael Viau, M.D., had an orthopedic consultation with Crow on March 27, 2021. Dr. Viau stated in a report that Crow's left hand was dominant and confirmed Crow's diagnosis of a left proximal humeral fracture with comminution and intra-articular extension. Dr. Viau compared surgical options with conservative treatment noting that due to the degree of comminution and intra-articular extension Crow may require surgery including a hemiarthroplasty. Crow and Dr. Viau decided to defer surgery and stated that Crow could be discharged in a sling.

{¶ 9}   4. Crow again saw Dr. Viau on April 5, 2021. Dr. Viau completed a commission MEDCO-14 physician's report of work ability ("MEDCO-14") form on April 7, 2021, certifying TTD compensation from March 26 until April 14, 2021 and restricting Crow to "[l]ight duty one arm work 2 days a week as tolerated." (R. at 27.)

{¶ 10} 5. Crow returned to work at Butler on April 14, 2021.

{¶ 11} 6. In a letter dated April 15, 2021, Lynette McCune, Butler assistant fiscal officer, provided the job descriptions for Crow.  In the job description form, McCune indicated that Crow's job entailed lifting and carrying up to 5 pounds frequently and between 6 and 25 pounds occasionally. The job entailed using both hands for simple grasping and pushing/pulling, left hand for fine manipulation, and the use of both feet for leg controls.

{¶ 12} 7. Butler passed three ordinances dated April 20, 2021 related to Crow's job duties. In ordinance 21-7, Butler terminated its mayor's court effective immediately. In ordinance 21-8, Butler authorized and directed its mayor to execute a contract with the

Regional Council of Governments for the administration and collection of Butler's income tax effective May 17, 2021. In ordinance 21-9, Butler terminated the position of mayor's court clerk effective immediately and the position of income tax clerk effective May 17, 2021.

{¶ 13} 8. Butler filed a C-55 salary continuation agreement dated April 21, 2021 in which Butler agreed to pay Crow her salary in lieu of TTD compensation from March 27 through April 13, 2021.

{¶ 14} 9. On April 21, 2021,McCune completed a BWC job description form for Crow's job duties, which McCune stated included requiring Crow to lift and carry up to 25 pounds occasionally; reach frequently; use both hands for simple grasping, pushing, and pulling; and using the left hand for fine manipulation.

{¶ 15} 10. At an office visit on May 3, 2021, Dr. Viau recommended Crow begin physical therapy. Following Dr. Viau's recommendation, Crow began participating in physical therapy three times a week for six weeks. Dr. Viau had a follow-up appointment with Crow on May 25, 2021.

{¶ 16} 11. In a letter to Butler dated May 18, 2021, Crow resigned her employment, making the following statement:

> This village has been my home most all my life and I have enjoyed working this past 24 plus years for the residents. In the passing of the recent legislation terminating 2 positions Income Tax Commissioner, Mayor's Court Clerk and reorganizing the Council Clerk's position, (two days a month at $65.00 per meeting and records requests); I do not feel I can accomplish this newly reorganized position effectively. Therefore, please accept my resignation effective immediately.
>
> As God closes one door, He opens another. Thank you for understanding.

(R. at 46.)

{¶ 17} 12. Crow was next examined by Darren Holsten, D.C., on June 28, 2021. Dr. Holsten recommended an MRI and orthopedic consultation. Crow submitted a C-23 notice dated June 28, 2021 designating Holsten as her physician of record. Crow underwent an MRI on July 28, 2021.

{¶ 18} 13. In a MEDCO-14 form dated August 16, 2021, Dr. Holsten indicated that Crow could not do the job held on the date of the injury as of June 28, 2021 and stated that Crow's possible return to work date was October 15, 2021. Dr. Holsten filed subsequent MEDCO-14 forms on October 12, 2021 and January 17, 2022 continuing to find Crow was unable to return to work and extending her return-to-work date.

{¶ 19} 14. In a C-86 motion dated September 17, 2021, Crow requested TTD compensation from June 28, 2021 to an estimated return to work date of October 15, 2021 and to continue.

{¶ 20} 15. Crow was examined by Thomas J. Kovack, D.O., on September 21, 2021. Dr. Kovack recommended surgery, stating that Crow "should have had surgery initially with her fracture," noting that in her initial x-rays, Crow "had a 3 or 4 part proximal humerus fracture with intraarticular extension and displacement," stating that Crow "more than likely should have had an arthroplasty then" but it was "treated nonoperatively." (R. at 235.) Dr. Kovack noted that Crow "has a lot of pain and limited motion." (R. at 235.)

{¶ 21} 16. In a C-9 request for medical service reimbursement or recommendation for additional conditions for industrial injury or occupational disease, which was dated October 27, 2021 and signed by Dr. Kovack, an additional allowance was requested for left proximal humerus fracture malunion. The BWC granted the additional allowance of "proximal humerus fracture w/malunion" on November 23, 2021. (R. at 247.)

{¶ 22} 17. In an affidavit dated November 30, 2021, Joseph Stallard, mayor of Butler, stated that Crow voluntarily resigned from her position on May 18, 2021 and disputed Crow's request for TTD compensation, claiming that Crow sought such compensation retroactive to May 15, 2021. Mayor Stallard stated that Crow "performed duties similar to that of a secretary/clerk, to include keeping notes, typing on a computer, record retention, and performing any and all duties associated with her position." (R. at 254.) Mayor Stallard stated that had it not been for Crow's voluntary resignation, she could have continued to be employed by Butler. Mayor Stallard averred that "[s]ubsequent to her voluntary resignation, [Crow] has been seen around her home performing yard work, to include operating a push mower, gardening, and tending to her home without ambulatory aid, shoulder support, or any observable assistance." (R. at 254.)

{¶ 23} 18. On November 30, 2021, a commission district hearing officer ("DHO") conducted a hearing on Crow's request for TTD compensation. In an order mailed December 3, 2021, the DHO denied Crow's request for TTD compensation. The DHO, citing R.C. 4123.56(F) found that Crow resigned from her position of employment and was not working for reasons unrelated to the allowed conditions in the claim.

{¶ 24} 19. On December 10, 2021, Crow filed an appeal from the DHO order.

{¶ 25} 20. On February 3, 2022, a commission staff hearing officer ("SHO") conducted a hearing on Crow's appeal from the DHO order. In an order mailed February 9, 2022, the SHO granted Crow's request for TTD compensation. Based on Dr. Holsten's MEDCO-14s dated August 16, 2021, October 12, 2021, and January 17, 2022, the SHO awarded TTD compensation from June 28, 2021, the date of Crow's first visit to Dr. Holsten, until February 3, 2022, the date of the hearing before the SHO.

{¶ 26} The SHO found that before Crow's injury, she performed three separate positions: "council clerk; income tax commissioner; and Mayor's Court Clerk." (R. at 262.) However, due to three ordinances passed by Butler on April 20, 2021, Crow's duties as Mayor's Court Clerk were terminated effective April 20, 2021 and her duties as income tax commissioner would be eliminated effective May 17, 2021, leaving Crow with only her duties as council clerk. The SHO noted that, according to Crow and consistent with the duties outlined in one of the ordinances passed on April 20, 2021, the duties of the council clerk included taking notes at council meetings twice a month, typing these meeting minutes, and responding to public records requests.

{¶ 27} The SHO made the following findings regarding Crow's testimony:

> [Crow] testified she returned to work performing all three positions to the best of her abilities despite initially having her left arm in a sling. She stated given the sling and the fact she is left hand dominant, she was unable to write to take the meeting minutes and really could not type them efficiently. Given this scenario and the fact her restrictions would prohibit the carrying record boxes and other duties requiring two hands, [Crow] was not able to perform all the duties of her former position although she attempted to continue to work with restrictions. [Crow] noted she was able to enter number data with her right hand for the income tax position. [Crow] testified that given her limitations, another co-worker took on a good bit of her job duties. This fact weighed heavily

> on [Crow], who felt she was getting paid to perform a job she wasn't really doing. She further noted that she felt that she could not go on performing below standards, so she resigned.

(R. at 262.) The SHO found Crow's testimony to be credible and persuasive. The SHO noted the text of Crow's resignation letter, particularly her statement that she was unable to perform her council clerk duties " 'effectively.' " (R. at 262.) The SHO stated: "From [Crow's] testimony, it was clear she was feeling badly by needing the assistance of another worker to fulfill all of her work duties and that she didn't want to continue being paid when she wasn't fully working." (R. at 262.) The SHO concluded that the reason Crow "left her job via resignation was related to her industrial injury." (R. at 262.)

{¶ 28} The SHO noted Crow began therapy on May 14, 2021, three days before the effective date of her resignation. The SHO found that at that time her arm was not capable of performing full work duties. Noting Crow's continuing issues, the SHO documented the May 25, 2021 office visit with Dr. Viau, in which Crow was regaining range of motion but was to have another three weeks of therapy. From the final physical therapy report, the SHO noted that Crow continued to have pain, strength, and mobility issues. Given Crow's ongoing issues, the SHO noted that Dr. Holsten, who began treating Crow as her physician of record on June 28, 2021, ordered a new MRI and orthopedic consultation, which led to the discovery of the malunion and need for surgery.

{¶ 29} Noting the text of R.C. 4123.56(F), the SHO made the following conclusions:

> [Crow's] inability to work is causally related to the allowed conditions in this claim. The medical evidence supports ongoing inability to return to her former position of employment. The evidence outlined above supports the reason [Crow] is no longer working for [Butler] is related to the industrial injury and her reduced abilities and enviable work ethic.

(R. at 263.) The SHO explicitly found Crow's testimony to be more credible than the November 30, 2021 affidavit of Mayor Stallard, noting that Mayor Stallard "incorrectly states [Crow] is requesting the payment of compensation retroactively to 05/14/2021, her last day of work," but that Crow's "request, per the 09/17/2021 C-86 Motion is from 06/28/2021." (R. at 263.)

{¶ 30} 21. On February 14, 2022, Butler filed an appeal from the SHO order granting TTD compensation. The commission refused the appeal in an order mailed March 1, 2022. Butler sought reconsideration on March 7, 2022. The commission denied Butler's request in an order mailed March 15, 2022 on the basis that Butler's request for reconsideration failed to meet the criteria of Industrial Commission Resolution R18-1-06.

{¶ 31} 22. Butler filed a complaint in mandamus in the instant case on May 4, 2022.[1]

## II. Discussion and Conclusions of Law

{¶ 32} Butler seeks a writ of mandamus ordering the commission to vacate its order granting TTD compensation to Crow.

## A. Requirements for Mandamus

{¶ 33} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, a relator must establish a clear legal right to the requested relief, that the commission has a clear legal duty to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Belle Tire Distribs. v. Indus. Comm.*, 154 Ohio St.3d 488, 2018-Ohio-2122; *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). Where the commission's factual determination is supported by some evidence, it has not abused its discretion and this court must uphold the decision. *State ex rel. Seibert v. Richard Cyr, Inc.*, 157 Ohio St.3d 266, 2019-Ohio-3341, ¶ 44, citing *State ex rel. Pass v. C.S.T. Extraction Co.*, 74 Ohio St.3d 373, 376 (1996).

{¶ 34} The commission is "exclusively responsible for assessing the weight and credibility of evidence." *State ex rel. George v. Indus. Comm.*, 130 Ohio St.3d 405, 2011-Ohio-6036, ¶ 11, citing *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18 (1987). Where the commission's decision is supported by some evidence, the presence of contrary evidence in the record is immaterial. *State ex rel. West. v. Indus. Comm.*, 74 Ohio St.3d

---

[1] In its complaint, Butler states that it seeks a writ of mandamus ordering the commission "to vacate its Order denying [Crow's] request for temporary total disability benefits, or return the claim to the [commission] for a re-hearing." (Compl. at 6.) In its merit brief, Butler asserts entitlement to a writ of mandamus because the commission "erred in granting [Crow] [TTD] benefits following her voluntary resignation of employment." (Relator's Brief at 12.) From this and Butler's other statements in its complaint and subsequent briefing, it is clear Butler seeks a writ of mandamus vacating the commission order *granting* Crow TTD compensation.

354, 356 (1996), citing *Burley*. However, the commission cannot rely on a medical opinion that is equivocal or internally inconsistent. *George* at ¶ 11. *See State ex rel. Lopez v. Indus. Comm.*, 69 Ohio St.3d 445, 449 (1994).

## B. Temporary Total Disability under Workers' Compensation Law

{¶ 35} " 'The purpose of TTD compensation is to "compensate an injured employee for the loss of earnings that he [or she] incurs while the injury heals." ' " *Ewell v. Montgomery Cty. Court of Common Pleas*, 10th Dist. No. 13AP-1078, 2014-Ohio-3047, ¶ 13, quoting *Cordial v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 05AP-473, 2006-Ohio-2533, ¶ 8, quoting *State ex rel. Baker v. Indus. Comm.*, 89 Ohio St.3d 376, 380 (2000). When a claimant is unable to work at their prior position of employment, TTD compensation is paid. *Id.* In order to be awarded TTD compensation, " 'the claimant must show not only that he or she lacks the medical capability of returning to the former position of employment but that a cause-and-effect relationship exists between the industrial injury and an actual loss of earnings.' " *State ex rel. Ohio State Univ. v. Pratt*, 169 Ohio St.3d 527, 2022-Ohio-4111, ¶ 17, quoting *State ex rel. McCoy v. Dedicated Transport, Inc.*, 97 Ohio St.3d 25, 2002-Ohio-5305, ¶ 35. " 'In other words, it must appear that, but for the industrial injury, the claimant would be gainfully employed.' " *Id.*, quoting *McCoy* at ¶ 35. "TTD benefits are paid during the healing and treatment period until: (1) the employee returns to work; (2) the employee's treating physician states that the employee is capable of returning to the former position of employment; or (3) the temporary disability becomes permanent." *Ewell* at ¶ 13.

{¶ 36} R.C. 4123.56, which governs TTD compensation, contains restrictions preventing the awarding of TTD compensation, providing in pertinent part:

> [P]ayment [for TTD] shall not be made for the period when any employee has returned to work, when an employee's treating physician has made a written statement that the employee is capable of returning to the employee's former position of employment, when work within the physical capabilities of the employee is made available by the employer or another employer, or when the employee has reached the maximum medical improvement.

R.C. 4123.56(A). R.C. 4123.56(B) provides formulas to compensate employees in situations where an employee "suffers a wage loss as a result of returning to employment

other than the employee's former position of employment due to an injury or occupational disease" or where an employee "suffers a wage loss as a result of being unable to find employment consistent with the employee's disability resulting from the employee's injury or occupational disease."

{¶ 37} Until the enactment of 2020 Am.Sub.H.B. No. 81 ("H.B. 81"), voluntary abandonment of employment was an affirmative defense to a claim for TTD compensation. *See State ex rel. Quest Diagnostics, Inc. v. Indus. Comm. of Ohio*, ___ Ohio St.3d ___, 2023-Ohio-2213, ¶ 16. Under the judicially-created doctrine of voluntary abandonment, "when a workers' compensation claimant voluntarily removes [themselves] from [their] former position of employment for reasons unrelated to a workplace injury, [the claimant] is no longer eligible for [TTD] compensation, even if the claimant remains disabled at the time of [their] separation from employment." *State ex rel. Klein v. Precision Excavating & Grading Co.*, 155 Ohio St.3d 78, 2018-Ohio-3890, ¶ 29.

{¶ 38} Effective September 15, 2020, H.B. 81 amended R.C. 4123.56 by adding division (F), which provides:

> If an employee is unable to work or suffers a wage loss as the direct result of an impairment arising from an injury or occupational disease, the employee is entitled to receive compensation under this section, provided the employee is otherwise qualified. If an employee is not working or has suffered a wage loss as the direct result of reasons unrelated to the allowed injury or occupational disease, the employee is not eligible to receive compensation under this section. It is the intent of the general assembly to supersede any previous judicial decision that applied the doctrine of voluntary abandonment to a claim brought under this section.

R.C. 4123.56(F). Claims pending on or arising after the effective date are subject to the provisions of R.C. 4123.56(F). *State ex rel. Autozone Stores, Inc. v. Indus. Comm. of Ohio*, 10th Dist. No. 21AP-294, 2023-Ohio-633, ¶ 8, fn. 1; *Pratt*, 2022-Ohio-4111, ¶ 10, fn. 2; H.B. 81, Section 3.

## C. Application

{¶ 39} Butler argues the commission abused its discretion and erred as a matter of law under R.C. 4123.56(F) by granting TTD compensation following Crow's voluntary resignation causing unemployment for reasons unrelated to the allowed injury. Butler's

arguments fail to account for the changes wrought by the addition of R.C. 4123.56(F), most notably including the abrogation of the voluntary abandonment doctrine.

{¶ 40} In *Autozone*, this court considered the operation of R.C. 4123.56(F). Under the facts of that case, following the claimant's injury, a workers' compensation claim was allowed for multiple conditions. The claimant continued to work with light duty restrictions until he became involved in an argument with another employee and was subsequently terminated from employment. The claimant sought TTD compensation and was denied by the employer. The claimant then underwent surgery, and a MEDCO-14 was filed by a physician indicating that the claimant was unable to work. The SHO issued an order granting TTD compensation based on the fact that the claimant was under restrictions due to the allowed conditions at the time of termination and was completely removed from the workforce after the surgery. The SHO therefore found that under R.C. 4123.56, the claimant was unable to work as a direct result of an impairment arising from the allowed injury from the date of the surgery.

{¶ 41} Responding to the employer's argument that the claimant was not entitled to TTD compensation because the claimant was not employed at the time of his termination, this court found that prior decisions relying on the voluntary abandonment doctrine had been "superseded as stated in R.C. 4123.56(F)." *Id.* at ¶ 34. Finding R.C. 4123.56(F) to be unambiguous, the court concluded that where a claimant is unable to work, "R.C. 4123.56(F) sets forth two operative questions to be eligible for TTD compensation: (1) whether he or she is unable to work as the direct result of an impairment arising from an injury or occupational disease; and (2) whether he or she is otherwise qualified to receive TTD compensation." *Id.* at ¶ 35. Importantly, R.C. 4123.56(F) does not operate to "impose an additional requirement on a claimant to prove he or she is unable to work *solely* due to an impairment arising from an injury or occupational disease." (Emphasis sic.) *Id.* Rather, "[o]nly when an otherwise qualified claimant is not working as a direct result of reasons unrelated to the allowed injury or occupational disease is the claimant ineligible to receive TTD compensation." *Id.*

{¶ 42} In this matter, the record demonstrates that Crow was unable to work during the period for which TTD compensation was sought. As such, it is necessary to answer the two operative questions posed by R.C. 4123.56(F) as described in *Autozone*. In answering

the first part of the analysis under *Autozone*, i.e., whether the claimant is unable to work as the direct result of an impairment arising from an injury or occupational disease, the record in this case, including the August 16, 2021 and subsequent MEDCO-14 forms signed by Dr. Holsten, provides some evidence Crow was completely unable to work due to her allowed conditions at the time of her first examination by Dr. Holsten. As in *Autozone*, the magistrate finds this evidence to be sufficient to satisfy the first sentence of R.C. 4123.56(F), demonstrating that Crow was unable to work as a direct result of impairment arising from her workplace injury for the period at issue. This evidence is concomitantly sufficient to negate the second sentence of R.C. 4123.56(F), showing the reasons Crow was not working are not "unrelated to the allowed injury." Regarding the second part of the analysis under *Autozone*, i.e., whether the claimant is otherwise qualified to receive TTD compensation, the restrictions in R.C. 4123.56(A) preventing the awarding of TTD compensation do not apply in this matter. Crow did not seek TTD compensation for the period while she was working for Butler, during a period when a physician found Crow was capable of returning to her former position of employment, when work within Crow's physical capabilities was made available by Butler or another employer, or when she had reached maximum medical improvement.

{¶ 43} Butler argues that at the time Crow resigned, no physician had certified that relator was unable to work in her position. Butler cites *State ex rel. Eckerly v. Indus. Comm.*, 105 Ohio St.3d 428, 2005-Ohio-2587, for the proposition that an injury must remove the injured worker from the job and that requirement cannot be satisfied if the claimant had no job at the time of the alleged disability. In *Eckerly*, the court, noting prior holdings in the evolution of the doctrine of voluntary abandonment, stated that a claimant who voluntarily abandoned their position of employment or were fired under circumstances that amount to a voluntary abandonment will be eligible to receive TTD compensation if they reenter the workforce and, due to the original industrial injury, become temporarily and totally disabled while working at the new job. The court stated that the requirement from prior voluntary-abandonment cases that the industrial injury must remove the claimant from their job "cannot be satisfied if claimant had no job *at the time of the alleged disability*." (Emphasis sic.) *Eckerly* at ¶ 9.

{¶ 44} *Eckerly* did not involve R.C. 4123.56(F) and was entirely based on the doctrine of voluntary abandonment and cases applying it. As a result, *Eckerly* is inapposite to the present matter. *Autozone* at ¶ 34. Beyond its citation to *Eckerly*, Butler's arguments mirror those raised by the employer and rejected by this court in *Autozone*. As stated in that case, the fact that a TTD claimant is "not working—alone—is not dispositive, but rather requires an inquiry into whether the claimant is unable to work as the direct result of an impairment arising from an injury or occupational disease." *Id*. at ¶ 33, citing R.C. 4123.56(F). Thus, Crow is not barred from receiving TTD compensation merely because she was not working at the time she applied.

{¶ 45} Butler also argues the SHO's reasoning for granting TTD compensation would permit any employee working in a light duty capacity to resign from his/her position of employment in order to receive TTD compensation. In particular, Butler points to the statements made in Crow's resignation letter in arguing that "Crow filed the current request for [TTD] benefits so that she could be paid her full wages while not working in any capacity." (Butler's Brief at 10-11.) Butler further "questions the veracity of [Crow's] testimony, as her actions conflict with her alleged reasons for resigning from her light duty position." (Butler's Brief at 11.) The commission responds that because its orders are based on facts unique to the injured worker and the claim, what may be awarded to other injured workers in other claims bears no relevance to the present matter.

{¶ 46} Butler's concerns are not borne out by the text of R.C. 4123.56(F) which requires TTD compensation be granted where the employee is unable to work as the direct result of an impairment arising from an injury and is otherwise qualified, and that no compensation be granted where the reason the employee is not working is the direct result of reasons unrelated to the allowed injury. It is the role of the commission to inquire as to the reason for a claimant's inability to work and make a determination regarding whether the inability to work is the direct result of an impairment or the direct result of reasons unrelated to the allowed injury. Here, the commission completed that task by finding Crow's "inability to work is causally related to the allowed conditions in this claim" and that "[t]he medical evidence supports on-going inability to return to her former position of employment." (R. at 263.) It is not the role of this court in an action in mandamus to resolve questions of witness credibility. Rather, it is long-settled law that such credibility

determinations are for the commission to make. *George,* 2011-Ohio-6036, at ¶ 11. Furthermore, as this court noted in *Autozone,* Crow is not required to establish that she is unable to work *solely* due to an impairment arising from an injury or occupational disease. While she may have had other reasons or motivations, there is some evidence in the record supporting the finding that she was unable to work as the direct result of an impairment arising from her allowed injury.

{¶ 47} Because the commission's order finding that Crow was not working as a direct result of an impairment arising from her injury is adequately explained and supported by some evidence, the commission has not committed an abuse of discretion in its order granting TTD compensation and, therefore, mandamus will not lie. *State ex rel. Aaron's, Inc. v. Ohio Bur. of Workers' Comp.,* 148 Ohio St.3d 34, 2016-Ohio-5011, ¶ 18, citing *State ex rel. Mobley v. Indus. Comm.,* 78 Ohio St.3d 579, 584 (1997).

**D. Conclusion**

{¶ 48} Based on the foregoing, Butler has not demonstrated a clear legal right to the requested relief or that the commission is under a clear legal duty to provide such relief. Accordingly, it is the decision and recommendation of the magistrate that Butler's request for a writ of mandamus should be denied.

/S/ MAGISTRATE
JOSEPH E. WENGER IV

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.