[Cite as *State ex rel. Giant Eagle, Inc. v. Indus. Comm.*, 2024-Ohio-2079.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel.<br>Giant Eagle, Inc., | : | |
| | : | |
| Relator, | | |
| | : | No. 23AP-119 |
| v. | | |
| | : | (REGULAR CALENDAR) |
| Ohio Industrial Commission<br>and Darius L. Jefferson, | : | |
| | | |
| Respondents. | : | |

D E C I S I O N

Rendered on May 30, 2024

**On brief:** *Matty, Henrikson & Greve, LLC, Kirk R. Henrikson, Erin E. Hooper,* and *Josh A. Friedman,* for relator.

**On brief:** *Dave Yost,* Attorney General, and *Denise A. Corea,* for respondent Industrial Commission of Ohio.

**On brief:** *Hoffman Legal Group, LLC,* and *Douglas S. Hunter,* for respondent Darius L. Jefferson.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

DORRIAN, J.

{¶ 1}  Relator, Giant Eagle, Inc. ("Giant Eagle"), has filed this original action requesting a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to reverse its order granting respondent Darius L. Jefferson ("Jefferson") temporary total disability ("TTD") compensation.

{¶ 2}  Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this court referred the matter to a magistrate of this court.  The magistrate issued the appended decision, including findings of fact and conclusions of law.  The magistrate recommended this court deny Giant Eagle's request for a writ of mandamus.

{¶ 3}   On January 15, 2024, Giant Eagle filed objections to the magistrate's decision.[1]  Thus, we must "undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law."  Civ.R. 53(D)(4)(d).

{¶ 4}   As provided in more detail in the magistrate's decision, on July 12, 2022 Jefferson was injured while working as a diesel mechanic for Giant Eagle.  His workers' compensation claim was allowed for the physical conditions of: (1) laceration right index finger, and (2) displaced fracture distal phalanx right index finger.

{¶ 5}   On the date of the injury, Jefferson was transported to University Hospitals Ahuja Medical Center emergency room.  Audrey Demarco, PA-C, completed an "Attending Physician Form" indicating Jefferson was capable of returning to work with the restriction of sedentary work only.  (Stip. at 15.)  Demarco also signed another form addressed to the "Treating Physician," which included a provision entitled "Safety Review Program Summary."  (Stip. at 16.)  That summary stated "[a]ll team members who experience a work related accident, receive medical attention, and are released to return to work their next scheduled working day, must return to work and participate in the Safety Review Program unless prohibited from doing so by the treating physician."  (Stip. at 16.)  The form did not include Jefferson's name or the date of injury.  Demarco checked a box on the form indicating that "[t]eam member can return to work for the Safety Review Program."  (Stip. at 17.)

{¶ 6}   After Jefferson returned to the workplace on July 12, 2022, he was terminated from his employment based on Giant Eagle's investigation into allegations that Jefferson had previously physically threatened a co-worker in violation of Giant Eagle's anti-harassment policy.

{¶ 7}   On July 18, 2022, Alyson Pucci, PA-C, conducted a follow-up examination of Jefferson.  Pucci completed a Physician's Report of Work Ability ("MEDCO-14") which stated that Jefferson was not able to return to the full duties of the job held on the date of injury from July 18 to October 18, 2022.  On July 29, 2022, Jefferson was examined by Eric Wolk, D.C.  In a MEDCO-14 signed on July 29, 2022, Dr. Wolk stated that Jefferson was

---

[1] By journal entry issued December 29, 2023, this court granted Giant Eagle's motion for an extension of time until January 16, 2024 to file objections to the magistrate's decision.

not able to return to the full duties of the job held on the date of injury from July 12 to October 10, 2022.

{¶ 8} In a letter dated July 29, 2022, Giant Eagle stated that Jefferson was not eligible for TTD "based on the employment termination." (Stip. at 51.) On August 9, 2022, Jefferson filed a C-86 motion requesting he be awarded TTD compensation for the period beginning July 13, 2022 and continuing. The motion was accompanied by Jefferson's C-84 request for TTD compensation signed July 29, 2022.

{¶ 9} On September 16, 2022, a district hearing officer ("DHO") conducted a hearing on Jefferson's request for TTD compensation. In a report issued September 20, 2022, the DHO noted Giant Eagle's argument that Jefferson's termination of employment on July 12, 2022 barred him from receiving TTD compensation pursuant to R.C. 4123.56(F). The DHO disagreed, finding Jefferson's termination did not act as a bar to TTD compensation. The DHO further found the claim file did not contain evidence that Jefferson had been reprimanded for threatening co-workers prior to his termination, did not contain a termination letter or witness statements from co-workers alleged to have been threatened by Jefferson, and that Jefferson's termination occurred only after he was injured. The DHO concluded that Jefferson's inability to work was due to the impairment arising from the allowed conditions in the claim. Jefferson was awarded TTD compensation from July 13 through September 16, 2022 and to continue with submission of supporting medical proof. The DHO based the order on Dr. Wolk's July 29, 2022 MEDCO-14 and Jefferson's C-84.

{¶ 10} On October 5, 2022, Dr. Wolk completed a MEDCO-14 extending the period that Jefferson was not able to return to the full duties of the job held on the date of injury from October 11 to December 12, 2022.

{¶ 11} On October 25, 2022, a staff hearing officer ("SHO") held a hearing on Giant Eagle's appeal from the DHO's order. In a report issued October 29, 2022, the SHO vacated the DHO's order and granted Jefferson TTD compensation from July 13 through October 25, 2022 and to continue upon submission of sufficient medical evidence supporting further disability. The SHO found that sufficient medical evidence established Jefferson was disabled for the awarded period as a result of the allowed conditions in the claim and that the period of disability was a direct result of an impairment arising from the allowed conditions in the claim. The SHO further found that Giant Eagle failed to establish

the loss of wages was the direct result of reasons unrelated to the allowed injury. The SHO based the order on Dr. Wolk's October 5 and July 29, 2022 reports, Pucci's July 18, 2022 report, the emergency room records dated July 12, 2022, and the office notes contained in the claim file. The commission subsequently refused Giant Eagle's appeal from the SHO's order and thereafter denied Giant Eagle's request for reconsideration.

{¶ 12} On February 22, 2023, Giant Eagle filed a complaint requesting this court issue a writ of mandamus ordering the commission to reverse its order granting Jefferson TTD compensation.

{¶ 13} In a decision rendered December 22, 2023, the magistrate recommended this court deny Giant Eagle's request for a writ of mandamus. The magistrate first rejected Giant Eagle's argument that Jefferson was not eligible for TTD compensation, pursuant to R.C. 4123.56(A), because on the day of his injury, the hospital treating physician released him to sedentary work and Giant Eagle made sedentary work available to Jefferson. The magistrate acknowledged that an employee is ineligible to receive TTD compensation, pursuant to R.C. 4123.56(A), when he or she is working or when work within his or her physical capabilities is made available by the employer. However, the magistrate observed Jefferson did not seek TTD compensation for the period when he was working or that work within his physical capabilities was allegedly made available by Giant Eagle.[2] The magistrate determined Jefferson was awarded TTD compensation for a period beginning July 13, 2022, there was no dispute that Jefferson was terminated from employment on July 12, 2022, the same day he was injured, and that Giant Eagle did not contend Jefferson worked after July 12, 2022 or that it made available work within Jefferson's physical capabilities after July 12, 2022. The magistrate concluded because Jefferson was awarded TTD compensation during a period when Jefferson was not working and Giant Eagle did not make work within Jefferson's physical capabilities available, Jefferson was not barred from receiving TTD compensation for the awarded period pursuant to R.C. 4123.56(A).

{¶ 14} The magistrate similarly rejected Giant Eagle's argument that Jefferson's inability to work stemmed from his termination of employment rather than his injury, thus rendering him ineligible to receive TTD compensation pursuant to R.C. 4123.56(F). The magistrate observed that in *State ex rel. Autozone Stores, Inc. v. Indus. Comm.*, 10th Dist.

---

[2] The magistrate found no record evidence to support Giant Eagle's assertion that it offered Jefferson a position with the safety review team after he returned from the hospital on July 12, 2022.

No. 21AP-294, 2023-Ohio-633, this court determined that pursuant to the clear and unambiguous language of R.C. 4123.56(F), only "two operative questions" must be answered in determining whether a claimant who is unable to work is entitled to TTD compensation: (1) whether the claimant is unable to work as the direct result of an impairment arising from an injury or occupational disease; and (2) whether the claimant is otherwise qualified to receive TTD compensation.

{¶ 15} The magistrate found the medical evidence cited by the SHO—Dr. Wolk's October 5 and July 29, 2022 reports, Pucci's July 18, 2022 report, emergency room reports from July 12, 2022, and office notes in the claim file—constituted some evidence to support the SHO's finding that Jefferson's disability was a direct result of an impairment arising from the allowed conditions in the claim. Citing *Autozone*, the magistrate noted the mere fact that Jefferson was terminated from employment was not determinative of the first question posed by R.C. 4123.56(F), i.e., whether Jefferson was unable to work as the direct result of an impairment arising from his injury, and that Jefferson was not required to establish his inability to work was only due to impairments arising from the allowed injury. Accordingly, the magistrate concluded the SHO's order finding Jefferson was unable to work as the direct result of an impairment arising from the allowed conditions in the claim was in accordance with the requirements of R.C. 4123.56(F) and *Autozone* and supported by some evidence in the record.

{¶ 16} Finally, the magistrate rejected Giant Eagle's argument that the SHO erred in granting TTD compensation because the weight of the evidence established that Jefferson's wage loss was unrelated to the injury. Noting the substantial body of case law prohibiting this court from re-weighing evidence before the commission in mandamus actions, the magistrate reiterated that some evidence supported the SHO's conclusion that Jefferson was unable to work as the direct result of an impairment arising from the allowed conditions in the claim.

{¶ 17} In response to the magistrate's decision, Giant Eagle submitted the following objections:

> [I.] The Magistrate erred in the interpretation of R.C. 4123.56(A) and its application to the instant case as Respondent, Darius Jefferson, was ineligible to request temporary and total disability benefits on the date of injury.

[II.] The Magistrate erred in finding that the SHO's decision awarding temporary and total disability compensation was supported by some evidence.

**{¶ 18}** Initially, we note Giant Eagle has not set forth a specific objection challenging the magistrate's findings of fact. Having independently reviewed the record, we adopt the magistrate's findings of fact as our own.

**{¶ 19}** To be entitled to relief in mandamus, Giant Eagle must establish that it has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Brown v. Indus. Comm.*, 10th Dist. No. 21AP-650, 2024-Ohio-797, ¶ 8, citing *State ex rel. Rouch v. Eagle Tool & Machine Co.*, 26 Ohio St.3d 197, 198 (1986). A clear legal right to a writ of mandamus exists when the commission abuses its discretion by entering an order not supported by some evidence. *Id.*, citing *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76, 79 (1986). *See also State ex rel. Aaron's Inc. v. Ohio Bur. of Workers' Comp.*, 148 Ohio St.3d 34, 2016-Ohio-5011, ¶ 18 ("When an order is adequately explained and based on some evidence, there is no abuse of discretion and a reviewing court must not disturb the order."). Questions of credibility and the weight to be given the evidence are within the discretion of the commission as the fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165, 169 (1981).

**{¶ 20}** The laws governing workers' compensation are set forth in R.C. Chapter 4123 for the general purpose of " 'provid[ing] that an employee who is injured in the course of employment is entitled to receive "compensation for loss sustained on account of the injury." ' " *State ex rel. Banks v. Indus. Comm.*, 10th Dist. No. 21AP-341, 2023-Ohio-4672, ¶ 18, quoting *State ex rel. Gross v. Indus. Comm.*, 115 Ohio St.3d 249, 2007-Ohio-4916, ¶ 7, quoting R.C. 4123.54(A). R.C. 4123.56 governs TTD compensation and sets forth in R.C. 4123.56(F) the circumstances under which a claimant is entitled to receive TTD compensation:

If an employee is unable to work or suffers a wage loss as the direct result of an impairment arising from an injury * * * the employee is entitled to receive compensation under this section, provided the employee is otherwise qualified. If an employee is not working or has suffered a wage loss as the direct result of reasons unrelated to the allowed injury * * * the employee is not eligible to receive compensation under this section. It is the intent of the general assembly to supersede any previous judicial decision that applied the

doctrine of voluntary abandonment to a claim brought under this section.[3]

{¶ 21} R.C. 4123.56(A) sets forth circumstances under which an award of TTD compensation is prohibited, providing in pertinent part:

> [P]ayment shall not be made for the period when any employee has returned to work, when an employee's treating physician has made a written statement that the employee is capable of returning to the employee's former position of employment, when work within the physical capabilities of the employee is made available by the employer or another employer, or when the employee has reached the maximum medical improvement.

{¶ 22} In its first objection, Giant Eagle contends the magistrate erred in interpreting and applying R.C. 4123.56(A). Giant Eagle essentially reasserts the argument that Jefferson was not eligible for TTD compensation pursuant to R.C. 4123.56(A) because on the date of his injury, July 12, 2022, he was released by the treating physician to sedentary work and a sedentary position was made available by Giant Eagle. As noted above, the magistrate rejected this argument, finding that Jefferson did not seek TTD compensation until July 13, 2022, the day after his employment was terminated; accordingly, Jefferson did not request TTD compensation for a period while he was working for Giant Eagle or when work within his physical capabilities was made available by Giant Eagle. Thus, the magistrate appropriately interpreted and applied R.C. 4123.56(A) in evaluating whether Jefferson was eligible for TTD compensation.

{¶ 23} Giant Eagle also contends TTD compensation was not payable to Jefferson on July 12, 2022, the day of his injury, because "he clocked in and earned wages that day, up until the time of his injury." (Jan. 15, 2024 Objs. at 2.) "This court has held repeatedly that an argument is waived when it is not asserted before a magistrate and is raised for the first time in objections to the magistrate's decision." *State ex rel. Freedom Ctr. v. Indus. Comm.*, 10th Dist. No. 22AP-87, 2024-Ohio-1376, ¶ 16, citing *State ex rel. McNew v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 20AP-404, 2022-Ohio-1859, ¶ 7. A review of Giant

---

[3] In *Autozone*, this court observed that in 2020, the Ohio General Assembly enacted 2020 Ohio Am.Sub.H.B. No. 81, which added R.C. 4123.56(F) to, in part, supersede judicial decisions applying the voluntary abandonment doctrine. *Id*. at ¶ 14. We further observed that the 2020 amendment applies to claims pending on or arising after the effective date of September 15, 2020. *Id*. at ¶ 8, fn. 1. There is no dispute that R.C. 4123.56(F) applies to this action.

Eagle's brief discloses that it failed to raise this argument before the magistrate; it is thus waived. Moreover, whether Jefferson worked on July 12, 2022 is irrelevant, as Jefferson did not request and was not awarded TTD compensation for that date.

{¶ 24} In its final argument under the first objection, Giant Eagle asserts for the first time that under R.C. 4123.55,[4] an injured worker is not entitled to TTD compensation until the worker has been disabled for a continuous period of two weeks or more after an injury has occurred. Thus, argues Giant Eagle, its inability to offer employment within Jefferson's physical capabilities after July 12, 2022 is immaterial because Jefferson was not eligible for TTD compensation on the date of injury. Giant Eagle did not raise this argument before the magistrate; accordingly, its assertions regarding R.C. 4123.55 have been waived. *Freedom*; *McNew*. Moreover, as Jefferson and the commission point out in their respective responses to Giant Eagle's objections, it is unclear how R.C. 4123.55 applies to the facts of this case, as Jefferson sought and was awarded TTD compensation for a continuous period in excess of two weeks.

{¶ 25} For the foregoing reasons, Giant Eagle's first objection is overruled.

{¶ 26} In its second objection, Giant Eagle argues the magistrate erred in finding that the SHO's decision awarding TTD compensation was supported by some evidence. Giant Eagle challenges for the first time the SHO's reliance on the medical records of Dr. Wolk and Pucci on grounds that the records are "inconsequential," having been issued after the date of injury. Because Giant Eagle did not raise this argument before the magistrate, it has been waived. *Freedom*; *McNew*. Furthermore, to the extent Giant Eagle challenges the weight to be afforded the medical reports, we reiterate that questions of credibility and the weight to be given the evidence are within the discretion of the commission as the fact finder. *Teece* at 169.

{¶ 27} Giant Eagle also reasserts the argument presented to the magistrate that Jefferson's inability to work does not stem directly from his workplace injury, but rather from his termination of employment following his injury on July 12, 2022, thus rendering him ineligible to receive TTD compensation pursuant to R.C. 4123.56(F). As noted above, the magistrate analyzed and applied R.C. 4123.56(F) and *Autozone* in concluding that the SHO appropriately relied upon the emergency room records, the treatment records and

---

[4] R.C. 4123.55 provides in part: "No compensation shall be allowed for the first week after an injury is received * * * and no compensation shall be allowed for the first week of total disability, whenever it may occur, unless and until the employee is totally disabled for a continuous period of two weeks or more.

MEDCO-14 forms issued by Pucci and Dr. Wolk in determining that Jefferson's inability to work as of July 13, 2022 was the direct result of an impairment arising from his injury and was not the direct result of reasons unrelated to the allowed injury, i.e., his termination from employment.

{¶ 28} Here, the record demonstrates Jefferson was unable to work during the period for which TTD compensation was sought. As such, it is necessary to answer the two operative questions posed by R.C. 4123.56(F) as described in *Autozone*. In answering the first part of the analysis under *Autozone*, i.e., whether the claimant is unable to work as the direct result of an impairment arising from an injury, the record in this case, including the MEDCO-14 forms signed by Pucci on July 18, 2022 and Dr. Wolk on July 29, and October 5, 2022, provide some evidence that Jefferson was unable to work due to his allowed conditions. Pursuant to *Autozone*, this evidence is sufficient to satisfy the first sentence of R.C. 4123.56(F), demonstrating that Jefferson was unable to work as a direct result of impairment arising from his workplace injury for the period at issue. This evidence is also sufficient to negate the second sentence of R.C. 4123.56(F), demonstrating the reasons Jefferson was not working are not "unrelated to the allowed injury." Regarding the second part of the analysis under *Autozone*, i.e., whether the claimant is otherwise qualified to receive TTD compensation, we have already determined that the restrictions in R.C. 4123.56(A) preventing the awarding of TTD compensation do not apply. As noted above, Jefferson did not seek TTD compensation for the period while he was working for Giant Eagle or when work within Jefferson's physical capabilities was made available by Giant Eagle.

{¶ 29} For the reasons set forth above, Giant Eagle's second objection is overruled.

{¶ 30} Upon review of the magistrate's decision, an independent review of the record, and due consideration of Giant Eagle's objections, we find the magistrate has properly determined the pertinent facts and applied the appropriate law. We therefore overrule Giant Eagle's two objections to the magistrate's decision and adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. Accordingly, the requested writ of mandamus is hereby denied.

*Objections overruled;*
*writ of mandamus denied.*

BOGGS and LELAND, JJ., concur.

APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel. Giant Eagle, Inc.,            :

        Relator,                             :

v.                                          :                    No.  23AP-119

[Industrial Commission of Ohio] et al.,     :                    (REGULAR CALENDAR)

        Respondents.                         :

M A G I S T R A T E ' S   D E C I S I O N

Rendered on December 22, 2023

*Matty, Henrikson & Greve, LLC, Kirk R. Henrikson, Erin E. Hooper,* and *Josh A. Friedman*, for relator. Argued: *Erin Hooper.*

*Dave Yost,* Attorney General, and *Alison N. Sackenheim*, and *Denise Corea,* for respondent Industrial Commission of Ohio. Argued: *Denise Corea.*

*Hoffman Legal Group, LLC*, and *Douglas S. Hunter*, for respondent Darius L. Jefferson. Argued: *Douglas Hunter.*

IN MANDAMUS

{¶ 31} Relator, Giant Eagle, Inc. ("Giant Eagle"), seeks a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to reverse its order granting respondent Darius L. Jefferson ("claimant") temporary total disability ("TTD") compensation.

## I. Findings of Fact

{¶ 32} 1. Claimant was injured in the course of and arising out of his employment as a diesel mechanic with Giant Eagle on July 12, 2022 when he sustained an injury to his right finger. Claimant was taken to the emergency room at University Hospitals Ahuja Medical Center where it was determined that he had a complex laceration on his right index finger

and a fracture through the middle phalanx. On the same date, a Bureau of Workers' Compensation ("BWC") first report of an injury, occupational disease or death ("FROI" or "FROI-1") form was filed. In the FROI form, it was indicated that claimant had suffered an open finger fracture on the right index finger. The claim was ultimately allowed for the conditions of (1) laceration right index finger, and (2) displaced fracture distal phalanx right index finger.

{¶ 33} 2. On July 12, 2022, Audrey Demarco, PA-C, completed an attending physician form in which it was indicated that claimant was able to return to work with restriction of sedentary work only. It was also indicated that claimant "need[ed] to follow up with ortho hand" and had been prescribed medication which would affect his ability to perform restricted duty or regular duty. (Stip. at 11.) Another form addressed to the "Treating Physician" was also signed by Demarco on July 12, 2022. (Stip. at 12.) The form included the following statement: "All team members who experience a work related accident, receive medical attention, and are released to return to work their next scheduled working day, must return to work and participate in the Safety Review Program unless prohibited from doing so by the treating physician." (Emphasis removed.) (Stip. at 12.) The form contained a description of the safety review program, including its physical demands. The form did not provide claimants name, but Demarco indicated on the form that the "[t]eam member can return to work for the Safety Review Program." (Stip. at 13.)

{¶ 34} 3. Alyson Pucci, PA-C, conducted a follow-up examination of claimant on July 18, 2022. Pucci found there to be a "large laceration extending from the distal pulp to the base of the index finger over the volar surface as well over the dorsal aspect of the finger from the base of the proximal phalanx to the DIP joint flexion crease." (Stip. at 24.) Because claimant had suffered "a bad soft tissue injury," Pucci stated that claimant "will likely have some stiffness and limitations of this finger after this injury." (Stip. at 24.) Pucci stated that claimant "likely will be off of work for several months given this injury." (Stip. at 24.)

{¶ 35} 4. On July 18, 2022, Pucci completed a MEDCO-14 physician's report of work ability ("MEDCO-14") form. Pucci indicated that claimant was not able to return to the full duties of the job held on the date of injury from July 18 to October 18, 2022.

{¶ 36} 5. Claimant was next examined by Eric Wolk, D.C., on July 29, 2022. Dr. Wolk found there to be "[s]ignificant swelling" and indicated "[r]ange of motion was unable to be measured at the PIP or DIP joint of the right index." (Stip. at 29.) Dr. Wolk

found a loss of grip strength and stated that claimant was "unable to close, fully flex, his right index finger." (Stip. at 29.) There was also "significant scarring with stitches of a 5cm laceration to dorsum of the right index finger with about a 2 cm laceration on the palmar surface." (Stip. at 29.)

{¶ 37} 6. In a MEDCO-14 signed on July 29, 2022, Dr. Wolk indicated claimant was not able to return to the full duties of the job held on the date of injury from July 12 to October 10, 2022.

{¶ 38} 7. Giant Eagle recognized the claim for "[l]aceration rt index finger, displaced fx of distal phalanx rt index finger" on July 29, 2022. (Stip. at 2.) In a letter dated July 29, 2022, Giant Eagle stated that claimant was "not eligible for temporary total disability based on the employment termination." (Stip. at 47.)

{¶ 39} 8. On August 9, 2022, claimant filed a C-86 motion requesting TTD compensation for the period July 13, 2022 and continuing. Claimant's motion was accompanied by a C-84 request for TTD compensation signed by claimant on July 29, 2022.

{¶ 40} 9. On September 16, 2022, a commission district hearing officer ("DHO") held a hearing on claimant's request for TTD compensation. In an order issued September 20, 2022, the DHO awarded TTD compensation from July 13 through September 16, 2022 and to continue with submission of supporting medical proof. The DHO based the order on Dr. Wolk's July 29, 2022 MEDCO-14 and claimant's C-84 request.

{¶ 41} The DHO noted Giant Eagle's argument that TTD compensation "is barred pursuant to R.C. 4123.56(F)" because claimant "is not working or has suffered a wage loss as the direct result of reasons unrelated to the allowed injury because his employment was terminated by [Giant Eagle] on the date of injury." (Stip. at 50.) Summarizing the testimony at the hearing, the DHO stated:

> [Jefferson] testified at today's hearing that he sought medical treatment on the date of injury. When he returned from seeking medical treatment he was immediately notified by the Employer that his employment was terminated. Ms. Prather testified that she performed an investigation while the Injured Worker was at the emergency department. During her investigation Ms. Prather learned that the Injured Worker had allegedly made threats against coworkers during his employment with the Employer. As a result, the Injured Worker's employment was terminated when he returned from the emergency department.

(Stip. at 50-51.) The DHO found claimant's "termination by [Giant Eagle] does not act as a bar to [TTD] compensation." (Stip. at 51.) Furthermore, the DHO found "no evidence in the claim file that [claimant] was reprimanded for threatening coworkers prior to his termination" and noted that the "claim file contains neither a termination letter nor witness statements from coworkers [claimant] allegedly threatened." (Stip. at 51.) Additionally, the DHO noted claimant's "termination occurred only after he was injured." (Stip. at 51.) The DHO concluded that claimant's "inability to work was due to the impairment arising from the allowed condition." (Stip. at 51.)

{¶ 42} 10. In a MEDCO-14 signed on October 5, 2022, Dr. Wolk extended the period that claimant was not able to return to the full duties of the job held on the date of injury from October 11 to December 12, 2022.

{¶ 43} 11. On October 25, 2022, a commission staff hearing officer ("SHO") held a hearing on Giant Eagle's appeal from the September 20, 2022 DHO order. In an order issued October 29, 2022, the SHO vacated the DHO's order and granted claimant TTD compensation from July 13 through October 25, 2022 and to continue on submission of sufficient medical evidence supporting further disability. Based on medical evidence from Dr. Wolk and Pucci, the SHO found there existed "sufficient medical evidence establishing that [claimant] is disabled for this period as a result of the allowed conditions in the claim." (Stip. at 52.) The SHO found the "period of disability is a direct result of an impairment arising from the allowed conditions in the claim" and further found it was not established that "this loss of wages is the direct result of reasons unrelated to the allowed injury or occupational disease." (Stip. at 52.) The SHO stated the order was based on the reports of Dr. Wolk dated October 5 and July 29, 2022, Pucci's report dated July 18, 2022, the emergency room records dated July 12, 2022, and office notes in the claim file.

{¶ 44} 12. On November 17, 2022, the commission issued an order refusing an appeal filed by Giant Eagle from the October 29, 2022 SHO order.

{¶ 45} 13. On December 15, 2022, the commission denied a request for reconsideration filed by Giant Eagle.

{¶ 46} 14. Giant Eagle commenced this mandamus action by filing its complaint on February 22, 2023.

## II. Discussion and Conclusions of Law

{¶ 47} Giant Eagle seeks a writ of mandamus directing the commission to reverse its order granting claimant TTD compensation.

## A. Requirements for Mandamus

{¶ 48} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, a relator must establish a clear legal right to the requested relief, that the commission has a clear legal duty to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Belle Tire Distribs. v. Indus. Comm.*, 154 Ohio St.3d 488, 2018-Ohio-2122; *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). Where the commission's factual determination is supported by some evidence, it has not abused its discretion and this court must uphold the decision. *State ex rel. Seibert v. Richard Cyr, Inc.*, 157 Ohio St.3d 266, 2019-Ohio-3341, ¶ 44, citing *State ex rel. Pass v. C.S.T. Extraction Co.*, 74 Ohio St.3d 373, 376 (1996).

{¶ 49} The commission is "exclusively responsible for assessing the weight and credibility of evidence." *State ex rel. George v. Indus. Comm.*, 130 Ohio St.3d 405, 2011-Ohio-6036, ¶ 11, citing *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18 (1987). Where the commission's decision is supported by some evidence, the presence of contrary evidence in the record is immaterial. *State ex rel. West. v. Indus. Comm.*, 74 Ohio St.3d 354, 356 (1996), citing *Burley*.

## B. Temporary Total Disability Compensation

{¶ 50} " 'The purpose of TTD compensation is to "compensate an injured employee for the loss of earnings that he [or she] incurs while the injury heals." ' " *Ewell v. Montgomery Cty. Court of Common Pleas*, 10th Dist. No. 13AP-1078, 2014-Ohio-3047, ¶ 13, quoting *Cordial v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 05AP-473, 2006-Ohio-2533, ¶ 8, quoting *State ex rel. Baker v. Indus. Comm.*, 89 Ohio St.3d 376, 380 (2000). When a claimant is unable to work at their prior position of employment, TTD compensation is paid. *Id*. In order to be awarded TTD compensation, " 'the claimant must show not only that he or she lacks the medical capability of returning to the former position of employment but that a cause-and-effect relationship exists between the industrial injury and an actual loss of earnings.' " *State ex rel. Ohio State Univ. v. Pratt*, 169 Ohio St.3d 527, 2022-Ohio-4111, ¶ 17, quoting *State ex rel. McCoy v. Dedicated Transport, Inc.*, 97 Ohio

St.3d 25, 2002-Ohio-5305, ¶ 35. " 'In other words, it must appear that, but for the industrial injury, the claimant would be gainfully employed.' " *Id.*, quoting *McCoy* at ¶ 35. "TTD benefits are paid during the healing and treatment period until: (1) the employee returns to work; (2) the employee's treating physician states that the employee is capable of returning to the former position of employment; or (3) the temporary disability becomes permanent." *Ewell* at ¶ 13.

{¶ 51} R.C. 4123.56, which governs TTD compensation, sets forth the circumstances under which a claimant is entitled to receive TTD compensation:

> If an employee is unable to work or suffers a wage loss as the direct result of an impairment arising from an injury or occupational disease, the employee is entitled to receive compensation under this section, provided the employee is otherwise qualified. If an employee is not working or has suffered a wage loss as the direct result of reasons unrelated to the allowed injury or occupational disease, the employee is not eligible to receive compensation under this section. It is the intent of the general assembly to supersede any previous judicial decision that applied the doctrine of voluntary abandonment to a claim brought under this section.

R.C. 4123.56(F). *See State ex rel. Autozone Stores, Inc. v. Indus. Comm. of Ohio*, 10th Dist. No. 21AP-294, 2023-Ohio-633.[5] The statute also contains other restrictions on qualifying for or continuing to receive an award of TTD compensation:

> [P]ayment [for TTD] shall not be made for the period when any employee has returned to work, when an employee's treating physician has made a written statement that the employee is capable of returning to the employee's former position of employment, when work within the physical capabilities of the employee is made available by the employer or another employer, or when the employee has reached the maximum medical improvement.

R.C. 4123.56(A).

---

[5] Until the enactment of 2020 Am.Sub.H.B. No. 81 ("H.B. 81"), voluntary abandonment of employment was an affirmative defense to a claim for TTD compensation. *See State ex rel. Quest Diagnostics, Inc. v. Indus. Comm. of Ohio*, ___ Ohio St.3d ___, 2023-Ohio-2213, ¶ 16. Effective September 15, 2020, H.B. 81 amended R.C. 4123.56 by adding division (F). Claims pending on or arising after the effective date are subject to the provisions of R.C. 4123.56(F). *Autozone* at ¶ 8, fn. 1; *Pratt*, 2022-Ohio-4111, ¶ 10, fn. 2; H.B. 81, Section 3. Because claimant's application for TTD compensation was filed on August 9, 2022, after the effective date of H.B. 81, the provisions of R.C. 4123.56(F) apply.

**C. Application**

{¶ 52} Giant Eagle asserts the commission erred by granting claimant's request for TTD compensation for multiple reasons. First, Giant Eagle asserts the commission's order awarding TTD compensation was not supported by some evidence because claimant's immediate inability to work did not stem from his industrial injury. Giant Eagle argues that pursuant to R.C. 4123.56(A), claimant was not eligible for TTD compensation because, on the day of his injury, he was released from the hospital by his treating physician to sedentary work, which Giant Eagle made available.

{¶ 53} An employee is indeed ineligible to receive TTD compensation pursuant to R.C. 4123.56(A) when they are working or when work within the physical capabilities of the employee is made available by the employer. *See generally Autozone*, 2023-Ohio-633, at ¶ 31 (stating that "[p]ursuant to R.C. 4123.56(A), claimants who are working are not eligible to receive TTD compensation"). However, here, claimant did not seek TTD compensation for the period when he was working or work within his physical capabilities was allegedly made available by Giant Eagle. Claimant sought and was awarded TTD compensation for a period beginning July 13, 2022 based on the July 29, 2022 MEDCO-14, in which Dr. Wolk found claimant was temporarily not released to work for the period beginning July 12 through October 10, 2022. It is undisputed that claimant was terminated on July 12, 2022, the same day he was injured. Giant Eagle does not contend that claimant worked after that date or that Giant Eagle made available work within claimant's physical capabilities after that date.[6] Thus, because claimant was awarded TTD compensation during a period when Giant Eagle did not make work within claimant's physical capabilities available and no other limitation in R.C. 4123.56(A) applies, claimant is not barred from receiving TTD compensation for the awarded period pursuant to R.C. 4123.56(A). *See State ex rel. Butler Village v. Indus. Comm.*, 10th Dist. No. 22AP-274, 2023-Ohio-3774, ¶ 42. *See also Autozone* at ¶ 19 (noting that "TTD compensation was awarded only for the period * * * when the evidence shows [the claimant] could not work anywhere—not any prior date" and

---

[6] Giant Eagle argues it "assigned [claimant] to the safety review team." (Giant Eagle's Brief at 9.) In its reply brief, Giant Eagle states that "[u]pon return from the hospital, [claimant] was offered a position with the safety review team." (Giant Eagle's Reply Brief at 2.) In support of this assertion, Giant Eagle points to the "Treating Physician" form that was signed by Demarco on July 12, 2022. Claimant's name does not appear on this "Treating Physician" form, nor was it signed by claimant. As there exists no transcript from the hearing before the DHO or SHO, there is no testimony in the record supporting Giant Eagle's assertions.

stating that "[t]o accept the employer's position that claimants who are *not* working are likewise disqualified would render the statute meaningless" (Emphasis sic.)).

{¶ 54} Next, Giant Eagle argues claimant was ineligible to receive TTD compensation pursuant to R.C. 4123.56(F). Specifically, Giant Eagle argues that claimant's "inability to work stemmed not from his injury, but rather his disciplinary termination." (Giant Eagle's Brief at 10.) Giant Eagle argues the direct link between the injury and wage loss does not exist in this case as "[claimant] was terminated because he threatened his co-workers, not because [of] any injury-related factors." (Giant Eagle's Brief at 10.)

{¶ 55} This court in *Autozone* expressly rejected arguments similar to those raised by Giant Eagle in this case. In *Autozone*, the claimant was terminated after suffering a workplace injury and being placed on light duty, but before he sought TTD compensation. Following his application for TTD compensation, the claimant underwent an approved shoulder surgery, and a physician issued MEDCO-14 forms indicating the claimant was unable to work until further evaluation. A commission SHO granted the claimant TTD compensation for the period between the claimant's surgery and his hearing before the SHO.

{¶ 56} In the mandamus action brought by the employer, this court considered the meaning and application of R.C 4123.56(F) to requests for TTD compensation. The employer argued that "as a matter of law an injured worker is not entitled to TTD compensation unless he is employed and actually suffered lost wages." (internal quotations omitted). *Autozone*, 2023-Ohio-633, at ¶ 32. Examining the statutory text, the court found R.C. 4123.56(F) to be unambiguous. The court emphasized that "not working—alone—is not dispositive," but instead, the statute "requires an inquiry into whether the claimant is unable to work as the direct result of an impairment arising from an injury or occupational disease." *Id.* at ¶ 33. "So long as that causal link is established, and [the claimant] is otherwise qualified, the claimant is eligible for TTD compensation." *Id.*

{¶ 57} The employer also argued the court "should analyze the effect of the [claimant's] termination and whether evidence exist[ed] that claimant had abandoned the workforce." *Id.* at ¶ 34. This court rejected the employer's arguments, stating that "this is exactly the analysis the legislature expressly superseded by enacting R.C. 4123.56(F)." *Id.* The court "decline[d] to extrapolate an additional requirement in R.C. 4123.56(F) that a claimant prove he or she is unable to work *only* due to an impairment arising from an injury

or occupational disease." (Emphasis sic.) *Id.* at ¶ 22. Furthermore, the court stated that to "adopt the employer's position would, in essence, turn the court's gaze back to those facts surrounding why the claimant left the workforce preceding the period of TTD compensation—effectively resurrecting the voluntary abandonment analysis expressly superseded by the legislature." *Id.* Thus, where a claimant is unable to work, the court found the clear text of the statute set forth "two operative questions" in order for the claimant to be eligible for TTD compensation: "(1) whether he or she is unable to work as the direct result of an impairment arising from an injury or occupational disease; and (2) whether he or she is otherwise qualified to receive TTD compensation." *Id.* at ¶ 35.

{¶ 58} Here, in the order granting TTD compensation, the SHO found there existed "sufficient medical evidence establishing that [claimant] is disabled for this period as a result of the allowed conditions in the claim." (Stip. at 52.) The SHO specifically cited the following as the basis for the order: the reports of Dr. Wolk dated October 5 and July 29, 2022, Pucci's report dated July 18, 2022, the emergency room records dated July 12, 2022, and office notes in the claim file. The SHO concluded the "period of disability is a direct result of an impairment arising from the allowed conditions in the claim" and further found it was not established that "this loss of wages is the direct result of reasons unrelated to the allowed injury or occupational disease." (Stip. at 52.)

{¶ 59} Review of the medical evidence cited by the SHO in the order granting TTD compensation reveals that it constitutes some evidence in support of the finding that claimant's disability was a direct result of an impairment arising from the allowed conditions in the claim. The mere fact that claimant was terminated is not determinative of the first question posed by R.C. 4123.56(F), i.e., whether claimant was unable to work or suffered a wage loss as the direct result of an impairment arising from an injury or occupational disease. As with the claimant in *Autozone*, claimant is not required to establish that his inability to work is *only* due to an impairment arising from an injury or occupational disease. Thus, the SHO's order finding claimant was unable to work as the direct result of an impairment arising from the allowed conditions in the claim was in accordance with the requirements of R.C. 4123.56(F) and supported by some evidence in the record.

{¶ 60} Next, Giant Eagle asserts the commission improperly refused to exercise continuing jurisdiction "in that the [SHO] awarded [TTD] despite [claimant's] wage loss

not being the result of allowed injury, violating R.C. 4123.56(F)." (Giant Eagle's Brief at 11.) Giant Eagle argues that "[claimant]was terminated from his employment due to his constant and well-documented harassment and threats made upon his co-workers." (Giant Eagle's Brief at 12.) Giant Eagle points to its anti-harassment policy and statements purportedly made by claimant's coworkers.[7] Giant Eagle concludes that the SHO's order granting TTD compensation was "clearly an error" because of "the myriad of evidence showing [claimant's] wage loss was unrelated to the workplace injury." (Giant Eagle's Brief at 13.)

{¶ 61} Giant Eagle's arguments appear to present a challenge to the weight of the evidence. However, such question is beyond the scope of review of this court in mandamus. *See State ex rel. Casey v. Indus. Comm. of Ohio*, 10th Dist. No. 20AP-247, 2022-Ohio-532, ¶ 21, quoting *State ex rel. Welsh Ents., Inc. v. Indus. Comm.*, 10th Dist. No. 19AP-127, 2020-Ohio-2801, ¶ 26 (stating that "this court 'cannot second guess the commission's judgments either as to witness credibility or on the proper weight to accord particular evidence' "); *State ex rel. Columbus Distrib. Co. v. Reeves*, 10th Dist. No. 21AP-399, 2023-Ohio-898, ¶ 8, quoting *State ex rel. Cincinnati, Inc. v. Indus. Comm.*, 10th Dist. No. 04AP-241, 2005-Ohio-516, ¶ 6 (stating that "[e]ven if there is 'conflicting evidence before the commission, this court does not re-weigh the evidence in mandamus' "); *State ex rel. Lawson v. Mondie Forge*, 104 Ohio St.3d 39, 2004-Ohio-6086, ¶ 34 (stating that "the commission has substantial leeway in both interpreting and drawing inferences from the evidence before it"). As previously discussed, some evidence supported the SHO's conclusion that claimant was unable to work as the direct result of an impairment arising from the allowed conditions in the claim. Thus, Giant Eagle has not demonstrated the SHO's factual determinations constituted an abuse of discretion or that the order was not in accord with the applicable law.

---

[7] Several letters dated October 21, 2022, over one month after the DHO hearing, appear in the record. In the letters, individuals state they witnessed claimant  stating he would stab someone. (Stip. at 20-22.) These letters do not indicate the relationship of the writers to the parties in this matter. Additionally, an acknowledgment of receipt of a "Giant Eagle Enterprise Handbook," which was purportedly signed by claimant on May 5, 2022, is included in the record. (Stip. at 14.) A "policies sign-off form," which was purportedly signed by claimant on May 5, 2022, also appears in the record. (Stip. at 15.) The "policies sign-off form" lists a number of policies including a "Harassment and Workplace Violence Policy." A copy of a "Harassment and Workplace Violence Policy" appears in the record. (Stip. at 16.) No disciplinary documentation or termination letter appears in the record. No transcript of the SHO hearing appears in the record to provide any further context to these documents.

**D. Conclusion**

{¶ 62} Based on the foregoing, Giant Eagle has not demonstrated a clear legal right to the requested relief or that the commission is under a clear legal duty to provide such relief. Accordingly, it is the decision and recommendation of the magistrate that Giant Eagle's request for a writ of mandamus should be denied.

/S/ MAGISTRATE
JOSEPH E. WENGER IV

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.